WINNIFRED MAY v. LENA ACKERMAN AND OTHERS.
GEORGE I. ASHTON, RECEIVER OF WALSH INVESTMENT
COMPANY.
MINNESOTA FEDERAL SAVINGS & LOAN ASSOCIATION
AND FRANK WINZIG AND MATHILDA WINZIG,
APPELLANTS.
ELIZABETH CORCORAN AND OTHERS, INTERVENERS.[1]

December 14, 1951.

Nos. 35,474, 35,475.

[1]Reported in 51 N. W. (2d) 87.

*Scott, Burke & Scott,* for appellant Minnesota Federal Savings & Loan Association.

*T. Frank Quinn,* for appellants Frank and Mathilda Winzig.

*John A. Burns, Paul C. Thomas, F. Manley Brist, E. L. Fogarty,* and *Cummins, Cummins & Hammond,* for respondent Winnifred May and intervener-respondents Elizabeth Corcoran as executrix of the will of Patrick H. Corcoran, Dante Seghieri, Nellie Maher, Bridie Lynch, Evelyn Jordan, Betty Peterson, Ethel Vollmer, and Augusta Donahue.

LORING, CHIEF JUSTICE.

Appeals from a judgment of the district court for Ramsey county entered June 9, 1950. The judgment reinstated the lien of a trust deed which had been satisfied of record, decreed foreclosure of the trust deed, and adjudged priorities of liens of bondholders under the trust deed, of a second mortgagee, and of the purchasers and present owners of the property involved for the amount they had paid for the property up to the time of this action.

Appellants Winzig hereinafter will be referred to as purchasers; appellant Minnesota Federal Savings & Loan Association as the

loan company; plaintiff and interveners as the bondholders; and the Walsh Investment Company and its receiver as trustee.

March 15, 1929, defendants Lena and Adam Ackerman, then owners of the property involved, executed 63 bonds acknowledging debts to the trustee, as trustee, and a trust deed to the same effect. The trust deed was recorded April 3, 1929.

July 19, 1929, by warranty deed, the Ackermans conveyed the premises to Anna and Oscar S. Risvold, as joint tenants, subject to the trust deed. Anna Risvold died in 1932.

February 28, 1936, Risvold executed a note and mortgage to the loan company for $16,500. The mortgage was recorded March 12, 1936. March 15, 1936 (actually March 16, as the 15th fell on Sunday), the following payments were made to the trustee:

| | | |
|---|---|---|
| 1. | Check from loan company | $15,838.87[2] |
| 2. | Cash | 327.93 |
| | | $16,166.80 |

In addition, Risvold executed to the trustee a note and mortgage in the sum of $1,200. This mortgage was recorded March 17, 1936. May 13, 1937, the trustee executed a satisfaction of the $1,200 mortgage, and this satisfaction was recorded. Thus, including the amount of the mortgage, the total amount paid to the trustee was $17,366.80. At this time (March 15), the total amount owing, including a two-percent bonus on the unmatured bonds, was $17,624.[3] In other words, if the two-percent bonus were included, the amount paid would be $257.20 short of the amount owing (or, if added in-

---

[2]The amount of this check has been referred to by the parties as $15,838.37, but the cancelled check shows the amount to be as stated above.

[3]Total amount of principal, matured and unmatured.........$16,800.00 (Bond No. 2 had matured, and $300 was still owing. Bond No. 3 matured March 15, 1936.)
Interest due—
On amount unpaid on bond No. 2...........$  9.00

terest were allowed for the period until the $1,200 mortgage was satisfied of record, the shortage would be approximately $300).

Nevertheless, a card on file with the trustee, entitled "Mortgage Loan Record," has a pencilled notation showing the amount due as $17,307.80, and an overpayment of $58.50. This notation was not fully explained on the trial.

Also, the trustee, on March 16, 1936, executed a satisfaction of the mortgage (trust deed). The satisfaction was recorded March 18, 1936. It recited that the mortgage (trust deed) of March 15, 1929, had been fully paid and satisfied. It was signed in the name of the Walsh Investment Company by William W. Walsh, as president, and by A. S. Downey, as assistant secretary. The satisfaction did not recite that the corporation was trustee, but the trust deed did so recite. The trustee never paid any of the money to the bondholders who are parties to this suit.

May 12, 1937, Risvold conveyed the premises to the purchasers by warranty deed, subject to the mortgage held by the loan company. This conveyance was recorded May 13, 1937. The purchase price was $23,500—$8,027.11 in cash, the balance of $15,472.89 representing the unpaid balance of the mortgage held by the loan company. Purchasers had no actual notice of the fraud of trustee.

In the fall of 1938, the trustee was found to be insolvent and a receiver was appointed. The instant action was commenced February 11, 1942, and a notice of *lis pendens* was filed on February 17 of that year. At this time, purchasers owed only $7,763.91 on the mortgage to the loan company.

■ The trust deed provided:

"16. It is further mutually agreed that the Grantors have the option and privilege of paying and redeeming on any interest date,

| | | |
|---|---|---|
| On amount of bond No. 3 | 15.00 | |
| On $16,000 in unmatured bonds | 480.00 | 504.00 |
| Bonus on unmatured bonds (2%) | | 320.00 |
| | | $17,624.00 |

any of said bonds before maturity in their reverse numerical order by the payment to the holder or to said trustee for the benefit of the holder, the amount of principal and accrued interest to the date of such redemption together with the payment of two (2) per cent upon the principal providing that in each thirty (30) days previous written notice of their intention so to do shall have been by them given to the Trustee. All such bonds so paid and redeemed together with the coupons attached thereto, shall be taken up and cancelled and shall thereupon cease to be covered by or participate in the security of this trust deed or mortgage."

The bonds provided substantially the same.

The parties cite many cases dealing with deeds of trust; none are squarely in point with the facts of the instant case. A trustee derives his authority from the instrument creating the trust, and each case must be decided in the light of the provisions of the particular trust instrument. See, Annotation, 96 A. L. R. 1233. In this case, the trustee specifically was given authority to receive payments, not only after maturity, but before maturity as well. The requirement of notice to the trustee was a condition precedent to the right to make the payments before maturity. It was for the benefit of the trustee; and, this being so, he could waive it. The failure to give notice (as the trial court found) cannot be said to have hurt the bondholders, as the notice was required only to be given to the trustee.

The provision as to the taking up and cancelling of the bonds was for the benefit of the mortgagors; so the bondholders cannot object that they were not taken up. However, the payment of a two-percent premium on the unmatured bonds was for the benefit of the bondholders and thus beyond the power of the trustee to waive. This being so, the amount paid to the trustee was insufficient to pay all bonds; but the trust deed provided that not all the bonds need be paid up at the same time. First to be paid would be the bonds which had matured, then the unmatured bonds in their reverse numerical order.

■ In this manner, all the bonds would have been paid except one,[4] as the payment was short approximately $300. The mortgage for $1,200 must be included in the amount paid on the bonds. While a trustee or agent, without specific authority, may not receive a note or pledge in lieu of money as payment to his principal, when the note or pledge is paid off, the principal is charged with having received payment. Restatement, Agency, § 178, and *comment a;* Shriver v. Sims, 127 Neb. 374, 255 N. W. 60, 94 A. L. R. 779; cf. Bardwell v. American Exp. Co. 35 Minn. 344, 28 N. W. 925. Nor does it matter that the trustee intended the fraud all the while, as long as those making the payments had no knowledge of such intent. M. S. A. 501.22, subd. 10, 501.39; Restatement, Agency, § 165, *comment d;* see, M. S. A. 520.02, 520.03 (not in effect at the time of the transactions in this case).

■ As stated above, not sufficient money was paid by Risvold to charge payment to all the bondholders. Part of one bond owned by intervener Bridie Lynch has not been paid. Risvold would be liable for this shortage, but he did not answer or appeal in this suit (because of death, presumably). The question before this court is whether the lien of the trust deed should be reinstated so as to give the bondholder an interest in the lands. The trial court said "Yes," and gave protection to the purchasers only to the extent of assuring that the money paid in by the purchasers up to the time of this suit would be returned to them by giving them a lien on the property. Because the property had increased in value, it was possible to say that all three liens could be satisfied.[5]

But, under the facts of the case, the arrangement of the trial court would be eminently unfair to the purchasers. If the purchasers had assumed the mortgage held by the loan company in

---

[4] This bond would be either No. 4 or No. 6, according to when the payment for the $1,200 mortgage is credited. Both bonds are owned by intervener Bridie Lynch.

[5] It is immaterial but interesting that the ruling of the trial court would have created a circuity of lien case, although its solution would not have been difficult. See, Benson, *Circuity of Lien—a Problem in Priorities,* 19 Minn. L. Rev. 139; Miller v. Stoddard, 54 Minn. 486, 56 N. W. 131.

addition to taking the land subject to it, they would have been bona fide purchasers to the full extent of the property. Enkema v. McIntyre, 136 Minn. 293, 161 N. W. 587, 2 A. L. R. 411. On the other hand, if at the time of the notice of *lis pendens* the purchaser is able to stop payment or pay his money into court without adverse effects, such as if he still owes money to the vendor under a purchase money mortgage, then the purchaser is protected only to the amount of moneys paid in, plus improvements, etc. See, Moulton v. Kolodzik, 97 Minn. 423, 427, 107 N. W. 154, 155. In this case, failure to pay the mortgage held by the loan company would have caused purchasers to lose their land. It should be taken into consideration that purchasers have been in possession of the land since 1937; and, while bona fide purchasers are not always protected in profits they might have made because of an increment in the value of the land, this is not a proper case to invoke such a rule. It should be borne in mind that by this suit bondholders are attempting to reinstate a lien after it has been satisfied of record. The question is whether the bondholders should be allowed to do so. As we have seen, the trustee was given specific authority to receive payments on the bonds before maturity. Restatement, Agency, § 72, provides:

"Unless otherwise agreed, authority to receive payment includes authority:

\*   \*   \*   \*   \*

"(b) to surrender to the payer any security for or evidence of the debt to which he is entitled and to give him such receipt as it is usual to give."

*Comment g* under this section provides:

"The agent is also authorized to make any release of record which is required, as where a statute requires a mortgagee upon payment of the mortgage to enter a release in the office of the recorder."

See, also, 2 Am. Jur., Agency, §§ 86, 172; Restatement, Agency, § 35. M. S. A. 507.41 requires a mortgagee to discharge the mortgage

within ten days after payment or be liable for damages. This is what is meant by the quoted comment from the Restatement. Therefore, in the instant case, the trustee had implied authority to execute the satisfaction of the trust deed.

■ Respondents assert that the satisfaction was defective in that it was executed by trustee without the words "as trustee." This caused no injury to anyone. The trust deed was made out to the trustee, and anyone examining the record could see that the satisfaction was a discharge of the trust deed, just as the satisfaction itself stated. Since no one was misled, the failure to use the words "as trustee" was not fatal. Cf. Levine v. Katz, 293 Mich. 493, 292 N. W. 466.

Respondents contend also that the purchasers should have investigated to see that the payments to trustee were proper. Any investigation possible by the purchasers could not have revealed fraud. As the trial court said, the purchasers can only be charged with notice and knowledge of the facts which would have been disclosed to them upon an examination of the instruments in the record.

■ Of course, purchasers had notice of the bondholders' claims at the time of the commencement of this suit; but by then their position had been changed in reliance on the record.

"* * * Although it is the law that a transfer by a trustee in contravention of the express provisions of the trust is void [citing Civ. Code] that rule has no application to the factual situation here presented. Where circumstances creating an estoppel are present, as here, a purchaser taking title without notice of the breach of trust secures an unimpeachable title." Phelps v. American Mtg. Co. 40 Cal. App. (2d) 361, 373, 104 P. (2d) 880, 887.

The facts in this case fit squarely into the language of this court in Woolson v. Kelley, 73 Minn. 513, 516, 76 N. W. 258, 259:

"The only ground upon which the defendants could prevail would be equitable estoppel; that is, that plaintiffs or their agent, Kelley, had been guilty of negligence in placing the satisfaction on record, and that some third party or parties had changed their condition

in reliance on the record,—as, for example, buying the land, and parting with a valuable consideration therefor."

Speaking for the court in Dimond v. Manheim, 61 Minn. 178, 181, 63 N. W. 495, 497, Mr. Justice Mitchell said:

"The equitable doctrine of estoppel by conduct, which is altogether different from technical legal estoppels in pais, so far from being odious, is a favored doctrine of the courts. Equitable estoppel, in the modern sense, arises from the 'conduct' of a party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do anything."

In the instant case, not only is the bondholder Bridie Lynch estopped because of the satisfaction executed by her agent under the authority of the trust deed and bonds, but by her own acts as well. Around August 13, 1936, on representations by trustee that the bonds were to be taken up, Bridie Lynch delivered the bonds, numbered 4, 5, 6, and 7, to the trustee. These were never returned. It is pertinent that bond No. 4 matured September 15, 1936, and bond No. 5 on March 15, 1937. Both of these dates were prior to May 12, 1937, when the purchasers bought the property, so we see that it was Bridie Lynch's failure to act in her own behalf that contributed to leading the purchasers to believe that the trust deed had been properly satisfied. As Mr. Justice Mitchell said in the Dimond case (61 Minn. 182, 63 N. W. 497):

"* * * First. To create an estoppel, the conduct of the party need not consist of affirmative acts or words. It may consist of silence or a negative omission to act when it was his duty to speak or act. Second. It is not necessary that the facts be actually known to a party estopped. It is enough if the circumstances are such that a knowledge of the truth is necessarily imputed to him."[6]

[6]For other Minnesota cases in which equitable estoppel was invoked on similar facts, see Roberts v. Friedell, 218 Minn. 88, 15 N. W. (2d) 496; Crane Co. v. Advance Plumbing & Heating Co. 177 Minn. 132, 224 N. W. 847; Thom v. Thom, 208 Minn. 461, 294 N. W. 461.

Since Bridie Lynch, because of the satisfaction executed by her agent, the trustee, and because of her own acts, is estopped from asserting her claim arising from her one bond, the only one which was not fully paid up by the payment to the trustee, the judgment of the trial court must be reversed. As payments made to the trustee must be charged to the bondholders, discharging their bonds, such bondholders other than Bridie Lynch have no claim in the property. The case is remanded to the lower court with directions to enter judgment for defendants-appellants.

Reversed and remanded.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.

