**LIBERTY MUTUAL INSURANCE COM-
PANY et al., Plaintiffs,**

**v.**

**ENJAY CHEMICAL COMPANY (NOW EX-
XON CORPORATION) et al.,
Defendants.**

Superior Court of Delaware,
New Castle.

Jan. 17, 1974.

Walter P. McEvilly, of Prickett, Ward, Burt & Sanders, Wilmington, for plaintiffs.

Bruce M. Stargatt, and Jack B. Jacobs of Young, Conaway, Stargatt & Taylor, Wilmington, for Enjay Chemical Co. (now Exxon Corp.)

Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, for defendant, Johnson & Johnson.

## OPINION

McNEILLY, Judge.

This is an action filed on November 5, 1971 by E. I. duPont deNemours & Company and its fidelity insurer, Liberty Mutual Insurance Company, (hereinafter collectively "duPont"), to recover certain monies allegedly owed by defendants, Enjay Chemical Company (now Exxon Corporation, but referred to herein as "Enjay"), and Johnson and Johnson. The basis of the action is the alleged non-payment of royalties under the terms of contracts whereby the plaintiff, duPont, granted unto Enjay and Johnson and Johnson the right to use certain duPont processes or procedures in consideration for defendants' payment of certain commissions or royalties. The terms of the contract are not in issue in this proceeding. In fact, the only basic issue involved is the question of whether the royalty payments which were transmitted by these defendants to duPont between 1962 and 1969 in the form of checks and converted by duPont's employee, C. H. D. who deposited the converted checks in his personal account at Bank of Delaware, did or did not constitute payment by defendants.

The record evidences that all royalties or other sums that duPont was entitled to from defendants were paid by checks. Over a period of nine years royalty checks totaling nearly One hundred thirty-five thousand dollars ($135,000.00) were fraudently endorsed and deposited to the personal account of C. H. D. who was an employee in the Elastomer Chemicals Department of duPont.

In the course of his assigned duties this accountant would periodically obtain possession and custody for official processing purposes incoming checks received by his Department from the defendants. These checks came to the Company on a quarterly basis, and as transmittal letters were received, with checks enclosed, C. H. D. would periodically withhold a transmittal letter and check; the check would be altered, fraudulently endorsed and then deposited to his account. The transmittal letter would be concealed, and thereafter to conceal his defalcation he would alter the next subsequent transmittal letter to indicate that the period covered by the subsequent transmittal letter included the period covered by the misappropriated check. By doctoring orderly letters to indicate that they covered a six-month period instead of a three-month period, he was successful in evading detection.

A review of duPont's records of royalty payments would reveal a transmittal letter covering a six-month period and receipt of a check in the proper amount which was received and credited to the duPont Company. It would not reveal a discrepancy in the sums received.

On or about September 13, 1971 a routine audit of duPont Company checks in the course of a bank reconciliation disclosed a questionable endorsement on one

check. Thereafter, duPont's payment voucher authorizing this check was inspected and revealed that C. H. D. had both prepared the voucher and endorsed the check. Further investigation revealed two additional checks payable to a fictitious payee which had been issued in this manner, and then subsequent investigation disclosed additional transactions which led to the discovery of the nearly One hundred thirty-five thousand dollars ($135,000.00) discrepancies.

The royalty checks involved are hereinafter listed:

A. Checks drawn by Johnson & Johnson on its account with Chase Manhattan Bank, payable to duPont as follows:

| | Date | Amount |
|---|---|---|
| i. | March, 1962 | $ 1872.50 |
| ii. | June, 1962 | 1998.15 |
| iii. | September, 1962 | 1129.45 |
| iv. | December, 1962 | 1462.30 |
| v. | March, 1963 | 1030.05 |
| vi. | June, 1963 | 1016.40 |
| vii. | September, 1963 | 140.35 |
| viii. | December, 1963 | 1925.00 |
| ix. | March, 1964 | 1575.00 |
| x. | June, 1964 | 1065.75 |
| xi. | September, 1964 | 700.00 |
| xii. | December, 1964 | 350.00 |
| xiii. | March, 1965 | 2625.00 |
| | TOTAL | $ 16889.95 |

B. Checks drawn by Enjay on its account with Citibank payable to duPont, as follows:

| | Date | Amount |
|---|---|---|
| i. | July 20, 1965 | $ 5,521.41 |
| ii. | October 29, 1965 | 9,029.34 |
| iii. | August 2, 1966 | 17,576.08 |
| iv. | May 5, 1967 | 26,935.67 |
| v. | May 3, 1968 | 27,617.88 |
| vi. | November 6, 1968 | 15,379.80 |
| vii. | February 4, 1969 | 12,043.75 |
| viii. | August 8, 1969 | 1,549.26 |
| ix. | July 31, 1969 | 554.75 |
| x. | October 30, 1969 | 596.40 |
| | TOTAL | $ 116,804.34 |

As these checks were received C. H. D. physically altered the face thereof by typing under the payee's name (Account of C. H. D. . . . . .). C. H. D. then endorsed the checks for deposit to his personal account at the Bank of Delaware.

All royalty checks during the nine-year period were sent by defendants to E. I. duPont deNemours Elastomer Chemicals Department, Wilmington, Delaware, 19898, Att: C. H. D., Control Division, in accordance with a written directive to that effect sent to defendants on duPont's letterhead by C. H. D.

Defendant, Enjay, has moved for summary judgment. Defendant, Johnson and Johnson, has moved to dismiss and plaintiffs have moved for summary judgment. Defendants, Johnson and Johnson and Enjay, raised two fundamental arguments in support of their motion:

(1) They have made payment to duPont and extinguished the debts owed to duPont.

(2) The suit, in any event, is barred by the three-year Statute of Limitations, 10 Del.C. § 8106.

Johnson and Johnson further argues that plaintiffs are estopped from contesting this motion because they consented to a similar prior motion by other defendants, and that the complaint is so frivolous as to defendant, Johnson and Johnson, that it should be dismissed and Attorneys fees awarded to said defendant.

duPont maintains:

(1) "Payment" has not been made to duPont, as a matter of law:

(2) This action is not subject to the limitation of 10 Del.C. § 8106, but rather arises from a contract under seal not within the Statute of Limitations.

(3) No basis whatsoever exists for assertion of an estoppel.

I find no evidence in the record that employee, C. H. D., had any express authority to receive and endorse checks coming to

his office in due course of business. On the other hand, there appears to be ample evidence that he had both implied and apparent authority to receive and endorse checks coming to the Company from defendants.

During the entire nine years of business with the defendants it was C. H. D. who regularly received defendants' checks and endorsed them, sometimes to his personal account and sometimes to duPont's account, as herein previously stated. Not once is it shown in the record that duPont ever challenged or countermanded C. H. D.'s authority to receive and endorse checks which were properly paid to duPont's account, i. e., not converted, or that duPont ever advised defendants not to deal directly with C. H. D. as was done.

■ In the ordinary course of business dealings an Agent may be cloaked with three types of authority. There may be express authority conveyed to the Agent, either orally or in writing, or there may be an implied authority evidenced by conduct of the principal, or there may be apparent authority evidenced by the conduct of an employee who holds himself out as possessing authority with the apparent consent or knowledge of the principal so as to estop the principal from denying such authority.

■ Implied authority of an agent is, in fact, actual authority evidenced by conduct, that is the conduct of the principal being such as to justify a Jury in finding that the Agent had actual authority to do what he did. This may be proved by evidence of acquiescence with knowledge of the Agent's acts, and such knowledge and acquiescence may be shown by evidence of the Agent's course of dealing for so long a period of time that acquiescence may be assumed. Outlines of the Law of Agency by Floyd R. Mechem, 4th Ed., page 29.

■ Likewise apparent or ostensible authority of an Agent is such power as a principal holds his Agent out as possessing or permits him to exercise under such cir-

cumstances as to preclude a denial of its existence. It is such authority as a reasonably prudent business man using due care and discretion would naturally suppose the employee to have. Agency 2A C.J.S. § 157. Also see 3 Am.Jur.2nd, pages 470 to 481.

■ duPont concedes that C. H. D. regularly received and endorsed checks from defendants and would endorse the checks sometimes to his personal account and sometimes to duPont's account. This series of transactions occurred over a period of nine (9) years, and not once is it shown that duPont ever challenged or countermanded C. H. D.'s authority to receive and endorse the checks which were properly paid to duPont's account. Nor did duPont ever advise defendants to deal with anyone in the Company other than C. H. D. duPont did not repudiate C. H. D.'s authority to receive and endorse those checks where the proceeds were paid to duPont, and, therefore, it cannot be permitted to repudiate the same authority where the proceeds were diverted to C. H. D. Holding that the creditor-employer on the same facts was held to have ratified the unauthorized action by its Agent, the California Supreme Court in Navrides v. Zurich Insurance Company, 5 Cal.3d 698, 97 Cal. Rptr. 309, 488 P.2d 637, 641 (1971) stated:

"She (plaintiff) must reckon with the elementary rule of agency law that a principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging. If a principal ratifies part of a transaction, he is deemed to ratify the whole of it." Id., 97 Cal.Rptr. 313, 488 P.2d 641.

Similarly, in Crumlish v. Price, Del. Supr., 266 A.2d 182 (1970) the Court held that a seller-principal was not entitled to recover the amount of the purchase price from the purchaser when the purchaser delivered his payment by check to the seller's agent-attorney.

"A principal is bound by an agent's apparent authority which he knowingly permits the agent to assume of which he holds the agent out as possessing". *Id.*, 183–184.

The Supreme Court recognized that a choice was required between two innocent parties, but felt that the burden should more equitably fall upon the principal:

"Situations such as this are unfortunate but where the choice as to which of two innocent parties must bear the loss, that burden must fall on the party but for whose conduct the problem would have never arisen. In this case, Errigo as the agent of the plaintiff, had apparent authority to accept payment in her behalf. The defendant acted reasonably in making payment and therefore the loss must fall on the plaintiff." *Id.*, 184.

The law in other jurisdictions supports defendants' contention that C. H. D. had authority and that payment to duPont was legally made. One factor considered as the length of time that the agent performed similar acts on behalf of the employer. In Federal Land Bank of Omaha v. Union Bank & Trust Co. of Ottumwa, 228 Iowa 205, 290 N.W. 512 (1940), the plaintiff's attorney received checks drawn to plaintiff banks' order over a period of four years, during which time the attorney would endorse the checks and deposit them in his personal account. The Court held that the plaintiff was estopped to deny the attorney's authority to receive the checks.

Whereas the conduct in the *Ottumwa* case occurred over four years, here C. H. D. acted for duPont for nine years. Similarly, in A. G. Spalding & Brothers v. Contra Costa County, 12 Cal.App.2d 262, 55 P.2d 520 (1936) it was found that where the agent acted for the plaintiff over a number of years, the plaintiff was charged with knowledge that his agent was receiving checks and endorsing them in his own name. Here C. H. D. regularly received checks from a number of companies, including the defendants, and he would endorse them sometimes to his personal account and sometimes to his employer's account. Since C. H. D. was endorsing checks to duPont's account at least some of the time, duPont is estopped to deny that C.H. D. had authority to endorse checks made payable to it.

An important factor in determining the existence of apparent authority is whether the debtor, upon sending his payments to the creditor's agent, would have any reason to suspect improper designs or acts by the agent. New Jersey, with citations or other jurisdictions, states that it is the established doctrine

"that when one indebted to a principal makes a payment to a duly authorized agent, having neither notice nor reason to know of any improper designs on the part of the agent, the indebtedness is discharged when the agent obtains the proceeds".

Gross v. Grimaldi, 64 N.J.Super. 457, 166 A.2d 592 at 596 (1960). In accord, May v. Ackerman, 235 Minn. 273, 51 N.W.2d 87, 91 (1951); Haynes Petroleum Corp. v. Turlington, 261 N.C. 475, 135 S.E.2d 43 (1964); and Strickland Transportation Co. v. First State Bank of Memphis, 147 Tex. 193, 214 S.W.2d 934 (1948).

It is evident from the record that nothing in the nine years of dealing between duPont's employee and the defendants was designed to put defendants on notice that he behaved improperly. It should be self-evident that the employer-creditor is responsible for the acts of his own employee. It should be equally apparent that the employer-creditor is better able to undertake his own inspection and precautions to avoid mishandling of checks by its employees, than is the debtor who sends the checks to the creditor. In our case years had gone by before duPont detected the fraud. Now duPont says that the debtor defendants should have looked at their cancelled checks, after having been returned from the presenting bank, to see if there were any fraudulent endorsements. Ob-

viously, large companies like the defendants here would receive thousands of checks back from their banks each month. It would be extremely burdensome and expensive for defendants to look at the endorsements on the back of each returned check. It would be even more difficult for them to determine if the endorser was authorized by the creditor to endorse the particular check in question. If there was a burden, it was duPont's not the defendants; Crumlish v. Price, *supra*.

■ Unquestionably obligated to duPont for royalties, defendants discharged their obligation to duPont by timely delivery of a series of checks to C. H. D., duPont's duly authorized agent, which checks were paid by the payee banks. That the proceeds of those checks were fraudulently converted by duPont's own employee C. H. D. is not a circumstance which requires defendants to pay their obligations twice. Restatement (2d) of Agency, § 178, 1 Mechem on Agency (2d ed.) § 953, p. 687; Navrides v. Zurich Ins. Co., 5 Cal.3d 698, 97 Cal.Rptr. 309, 488 P.2d 637 (1971); Haynes Petroleum Corp. v. Turlington, 261 N.C. 475, 135 S.E.2d 43 (1964); Moss v. Standard Brands, Inc., 68 Misc.2d 625, 328 N.Y.S.2d 275 (1971); Strickland Transp. Co. v. First State Bank of Memphis, 147 Tex. 193, 214 S.W.2d 934 (1948); Zidek v. West Penn Power Company, 145 Pa.Super. 103, 20 A. 2d 810 (1946); Mills v. Hurley Hardware & Furniture Co., 129 Ark. 350, 196 S.W. 121 (1917); McFadden v. Follrath, 144 Minn. 85, 130 N.W. 542 (1911); Sage v. Burton, 84 Hun 267, 32 N.Y.S. 1122 (1895); see generally, Anno., 49 A.L.R. 843 (1973).

The rule as set forth in § 178 of Restatement (2) of Agency is:

"(2) If an agent who is authorized to receive a check payable to the principal as conditional payment forges the principal's endorsement to such a check, the maker is relieved of liability to the principal if the drawee bank pays the check and charges the amount to the maker."

Mechem, in his treatise, states:

"Of course, where the agent is authorized to receive the check, the fact that he afterwards wrongfully endorses it and obtains the money upon it, does not destroy the effect of the check as payment by the drawer." (1 Mechem on Agency (2d ed.) § 953, p. 687).

Comment C to § 178 of the Restatement would impose the risk of loss upon the payee (duPont) instead of the drawers, even if no recovery from the bank could be had:

"Thus, if the drawee bank cashes the check after a forgery and embezzlement by the agent and charges the amount to the debtor, the latter is relieved of his debt. The creditor then would be subrogated to the right of the debtor against the bank. If, in the meantime, the bank become insolvent, it is the creditor and not the debtor who loses."

In Haynes Petroleum Corp. v. Turlington, *supra*, 135 S.E.2d 43, the drawer-debtor delivered checks to an agent of the creditor authorized to receive payment. The agent converted the proceeds. The North Carolina Supreme Court held that the drawer-debtor had no duty to see that the agent properly delivered the checks to the creditor-principal, and was not required to pay the underlying obligation a second time, even though the drawer had signed the checks and allowed the agent to fill in the name of the payee.

In Strickland Transportation Co. v. First State Bank of Memphis, *supra*, 214 S.W.2d 934, the drawee, White Auto Store, delivered checks to Akard, an agent of Strickland. Akard converted the check proceeds and Strickland sued the drawee bank to recover its loss. One of Strickland's theories of recovery was that the drawer (White Auto) was entitled to recover against the bank, and that Strickland was an assignee of White Auto's rights against the bank. The Texas Supreme Court rejected this contention, holding that since White's debt to Strickland had been paid, White had

suffered no loss and, therefore, Strickland had no claim:

"The unfortunate position in which petitioner finds itself is not due to any act or omission of White Auto Store but arises solely from the unfaithfulness of petitioner's own agent. Under those circumstances it would not be just to say that White Auto Store must pay its debt again, either on the theory that it has recourse against the bank or on the theory that petitioner may have no effective remedy against the bank. It should not have to suffer the annoyance and expense of litigation merely because petitioner's agent proved untrustworthy; those burdens justly belong to petitioner. We think White Auto Store's liability was discharged by its delivery of the checks to Akard and their subsequent payment by the bank to Akard, and that, therefore, White Auto Store had no cause of action against the bank to assign to petitioner." (214 S.W.2d at 939)

*Accord*, McCook v. First State Bank, 367 S.W.2d 66 (Tex.Civ.App.1963).

The reasoning underlying these authorities is that the payment of a check delivered to an authorized agent is as effective as would be the payment of cash to the principal. In either case the principal has been paid, albeit the agent subsequently converted the funds rightfully belonging to the principal. As stated by the court in Burstein v. Sullivan, 134 App.Div. 623, 119 N.Y.S. 317 (1909):

"A payment to Melle (the agent) in cash would have been a payment to the plaintiffs, though he had stolen the money; and the defendant should not be compelled to pay twice, or subjected to the hazard of a lawsuit with the bank, for having taken the precaution to protect the plaintiffs by making a check payable to their order. It is true that the delivery of a check or of a note does not of itself discharge the indebtedness. If the check or the note is not paid, the creditor may sue on the original indebt-

edness . . . . But where a debtor delivers his check to the creditor or his agent, duly authorized to receive it, and has funds in the bank to meet the check, the transaction, as between the debtor and the creditor, should be treated as a payment, precisely as though cash had been paid, even though the agent forges an endorsement and steals the money." (119 N.Y.S. at 319)

To hold that payment had not been made by defendants is to create the harsh result not only of forcing defendants to pay the same obligation twice, but also of allocating the loss against a party which had not power or control over the person who causes the loss. C. H. D. was duPont's employee, not defendants and nothing defendants could have done would have insured his trustworthiness. Burstein v. Sullivan, *supra*; Strickland Transportation Co. v. First State Bank of Memphis, *supra*. Thus, in McFadden v. Follrath, *supra*, the loss was allocated to the party directly responsible for, and having control of, the dishonest agent.

The draftsmen of the Uniform Commercial Code have taken the position that losses caused by an unfaithful employee should be a cost of the business enterprise in the slightly different factual context of a "padded payroll" case. When the employee supplies the name of a fictitious payee (as C. H. D. did with the "Burton Rubber Company" checks drawn by duPont on its own account), the draftsmen contend that the business, rather than the bank, should bear the loss:

"The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his busi-

ness rather than of the business of the holder or drawee."

Official comment 4 to § 3–405. The reasoning applies equally to third party checks made payable to duPont which C. H. D. diverted. duPont should have exercised care in his selection and supervision. Defendants *should not* be held responsible for the faithlessness of duPont's employee over which it had no control, which faithlessness was permitted to continue over a period of nine (9) years.

Having duly delivered royalty checks to duPont's authorized employee, C. H. D., and those checks having been paid by defendants' drawee banks, defendants have fully paid and satisfied the obligation to duPont under the royalty agreements and should not be forced to pay its obligation twice.

Inasmuch as the foregoing is dispositive of plaintiff's claim against these defendants I find no reason to discuss the remaining aspects of the case except to say in passing that I do not consider plaintiff's claim to be of a frivolous nature as asserted by defendant, Johnson and Johnson.

For the reasons stated defendants' motions to dismiss the complaint and for summary judgment are hereby granted, and plaintiff's motion for summary judgment is hereby denied. It is so ordered.