[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. INTRODUCTION
This case, tried to the court, involves the unhappy task of deciding which of two innocent parties must bear a substantial loss caused by a dishonest (and now defunct) mortgage broker.
The facts, most of which have been stipulated, are not in question. Each party seeks to work its way through the maze of the law. The plaintiffs assert multiple causes of action in the hope that one of them will lead to the desired result. The defendant resists each of these efforts. It will be helpful to begin with the facts.
II. THE FACTS
In the mid 1990's, an entity named Elixer Limited Partnership ("Elixer") developed condominium units in Madison. It financed this development with the assistance of Mutual Mortgage Services, Inc. ("Mutual"), a mortgage loan broker. The president and chief operating officer of Mutual was Paul J. Smith. Elixer borrowed money from Mutual to finance its condominium units and made mortgages on the units to secure those loans. Mutual, in turn, assigned its mortgages to the investors who provided it with the money it used for the loans.
The defendant, Andrew Tobias, is a well-known financial writer and an investor in his own right. He lives in Florida but made a handful of real estate investments in Connecticut through Smith, who he never actually met. One of these investments was a mortgage on the property in question here, a condominium unit developed by Elixer at 228 Legend Hill in Madison (the "Property").
Elixer developed the Property by using a loan from Mutual financed with Tobias's money. On February 16, 1994, Elixer gave Mutual a note in the amount of $151,420. The note was secured by a mortgage of the same date recorded in the Madison Land Records (the "Mortgage"). On the same date, Mutual assigned the Mortgage to Tobias. The assignment was also recorded CT Page 8702 in the Madison Land Records. Thereafter, payments on the note were made by Elixer to Mutual, which then remitted the payments to Tobias.
In 1995, the plaintiffs, Helene and William Gordon, entered the picture. The Gordons were an elderly couple planning to sell their existing home and purchase a condominium unit to be their residence. They decided to buy the Property and retained Basil Duncan, an experienced real estate attorney, to represent them. Duncan did a title search and contacted Alan Senie, the attorney for Elixer, concerning the proposed purchase. Elixer, in turn, contacted Mutual.
On February 1, 1995, Smith wrote a letter on Mutual stationery to Elixer stating that, "A release will be provided on [the Property] upon acceptance and clearance of payment in the amount of $124,998.32 which is good through 2-1-95. A per diem of $48.34 should be added to each day after the first of February."
The closing occurred on February 2, 1995. Senie wrote Duncan and Mr. Gordon the following letter:
 This letter is to certify that there exists a certain mortgage held by Mutual Mortgage Services, Inc. recorded February 16, 1994 in Volume 602, page 327 of the Madison Land Records, which mortgage was assigned to Andrew Tobias in Volume 602, page 345 of the Madison Land Records.
 This letter is to also certify that I have set sufficient funds aside to satisfy said mortgage, that I shall take responsibility for the payoff and satisfaction of said mortgage, that I shall take responsibility for obtaining and recording the Release for said mortgage, and that I shall forward copies of the same to Basil Duncan, Esq., 20 Water Street, Gulford [sic] Ct. 06437. Until said Release is obtained, the Seller and the undersigned agree to indemnify and hold harmless the Buyer, Attorney and Title Company from any claims, lsoses [sic], damages or costs that may arise pursuant to this mortgage.
Senie gave Mutual his firm's check for $125,046.66, the amount required by Mutual's letter of the previous day. This check was negotiated by Mutual and cleared the bank. Smith gave Elixer a receipt for this amount on Mutual stationery.
The Gordons paid Elixer $172,500 for the Property. This was a sufficient amount to pay off all existing mortgages on the Property, including Tobias's. (The Property was subject to a total of four mortgages, but the other three were paid off uneventfully.) Elixer CT Page 8703 conveyed the Property to the Gordons by warranty deed. The deed, recorded in the Madison Land Records on February 3, 1995, is not facially subject to any mortgage.
Unhappily for both Tobias and the Gordons, Mutual was a fraudulent enterprise. Although, as mentioned, Mutual received $125,046.66 at the closing, it neither remitted this sum to Tobias nor informed him of the closing. Instead, Mutual continued to send Tobias regular payments on the Mortgage. Tobias received the last such payment on July 27, 1997. On August 9, 1997, Smith died, and Mutual's scheme quickly collapsed. Tobias received no further payments on the Mortgage.
Tobias has never signed a release on the Mortgage. In the aftermath of Smith's death, Tobias retained counsel. On November 22, 1997, Tobias's attorney wrote to the Gordons demanding payment due on the Mortgage. The Gordons' receipt of this letter was their first indication that anything was amiss.
The Gordons contacted Attorney Duncan, who in turn contacted Attorney Seine. On December 3, 1997, Seine sent Mutual a letter with an accompanying affidavit (the "First Letter" and the "First Affidavit"). The First Letter and the First Affidavit constituted a demand for the release of the Mortgage pursuant to Conn. Gen. Stat. § 49-8a. The First Affidavit was recorded in the Madison Land Records.
The Gordons subsequently retained Attorney Jonathan Bowman to represent them in this matter. On April 13, 2000, Attorney Bowman sent Tobias a letter with an accompanying affidavit (the "Second Letter" and the "Second Affidavit"). The Second Letter and the Second Affidavit constituted a second demand for release of the Mortgage pursuant to § 49-8a. The Second Affidavit was recorded in the Madison Land Records.
On May 8, 2000, the Gordons commenced the present action by service of process. The two Gordons are the plaintiffs, and Tobias is the sole defendant.
On November 15, 2000, Attorney Bowman sent Tobias a letter with an accompanying Affidavit (the "Third Letter" and the "Third Affidavit"). The Third Letter and the Third Affidavit constituted a third demand for release of the Mortgage pursuant to § 49-8a. The Third Affidavit was recorded in the Madison Land Records.
 III. THE PLEADINGS
The Gordons' Second Amended Complaint consists of four counts. The CT Page 8704 First Count seeks a judgment ordering Tobias to execute and deliver a release of the Mortgage and a separate "judgment declaring the . . . Mortgage to be released of record pursuant to the provisions of Conn. Gen. Stat. § 49-8a" as well as compensatory and punitive damages. The Second Count seeks a judgment "determining the rights of the parties in and to the Property pursuant to Conn. Gen. Stat. § 47-31" and a separate judgment "determining the . . . Mortgage to be released of record pursuant to the provisions of Conn. Gen. Stat. § 49-8a" as well as compensatory and punitive damages . . . me Third Count seeks equitable remedies. The Fourth Count alleges a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, et seq. ("CUTPA").
Tobias alleges eight special defenses. The First Special Defense alleges waiver. The Second Special Defense alleges equitable estoppel. The Third Special Defense claims that Conn. Gen. Stat. § 49-8a
violates the due process clauses of the state and federal constitutions. The Fourth Special Defense, as to the First Count only, alleges that the Gordons have an adequate remedy at law and are not entitled to equitable relief. The Fifth Special Defense, as to the First Count only, alleges that the Second Count constitutes an adequate means of resolving the controversy so that a declaratory judgment does not lie and that the owners of a second condominium unit are also encumbered by the Mortgage and have not been notified of the action. The Sixth Special Defense, as to the Second Count only, alleges that the owners of the second condominium unit are parties having an interest in this proceeding "and this matter cannot proceed to judgment without there [sic] being parties." The Seventh Special Defense, as to the Third Count only, alleges laches. The Eighth Special Defense, as to the Third Count only, alleges the running of the statute of limitations.
The action was tried to the court on April 5 and June 13, 2001. The case was submitted by posttrial briefs on June 27, 2001. The causes of action set forth in the Second Amended Complaint must now be considered in turn.
IV. DISCUSSION
A. The First Count
The First Count seeks a judgment ordering Tobias to execute and deliver a release of the Mortgage and a separate "judgment declaring the . . . Mortgage to be released of record pursuant to the provisions of Conn. Gen. Stat. § 49-8a" as well as compensatory and punitive damages. This count asserts a statutory cause of action under § 49-8a. The initial judicial task is to determine whether the asserted statutory CT Page 8705 cause of action exists. "Statutory intent on this . . . point is determinative." Alexander v. Sandoval, 121 S.Ct. 1511, 1519 (2001).
The statutory text and structure indicate that the asserted cause of action does not exist. Sec. 49-8a provides a detailed mechanism whereby an attorney for a mortgagor or an officer of a title insurance company can execute and cause to be recorded in the town land records an affidavit stating that the statutory requirements have been complied with and that the mortgage loan has been paid. Subsection (f) of the statute provides that, "Such affidavit, when recorded, shall constitute a release of the lien of such mortgage or the property described therein." The statute suggests no litigational means of enforcement. In this respect, it stands in sharp contrast to its much older neighbor, Conn. Gen. Stat. § 49-8 (c), which expressly provides a damages remedy for mortgagees who have unsuccessfully sought releases.
Upon this point, as Holmes, J. famously said, "a page of history is worth a volume of logic." New York Trust Co. v. Eisner, 256 U.S. 345, 349
(1921). The equity of redemption has long been connected with mortgages. "[S]o long as the instrument is one of security, the borrower has in a court of equity a right to redeem the property upon payment of the loan."Peugh v. Davis, 96 U.S. 332, 337 (1878). In Connecticut, this right was historically exercised by a petition in chancery to redeem the mortgaged premises. Robinson v. Cross, 22 Conn. 171 (1852); Bulkley v. Bulkley, 2 Day 363 (1806).
In 1869, the legislature created an additional, statutory remedy. Upon payment, a mortgagor could deliver a written request for a release, and, "upon the willful neglect or refusal to do so for thirty days," the mortgagee would forfeit the sum of five dollars per week. 1869 Conn. Pub. Acts ch. XVI. This was the origin of Conn. Gen. Stat. § 49-8
(c), which now requires a mortgagee to execute and deliver a release within sixty days of a written request for release and provides that, "The mortgagee . . . shall be liable for damages to any person aggrieved at the rate of two hundred dollars for each week after the expiration of such sixty days up to a maximum of five thousand dollars or in an amount equal to the loss sustained by such aggrieved person as a result of the failure of the mortgagee . . . to execute and deliver a release, whichever is greater, plus costs and reasonable attorney's fees." This statutory remedy coexists with older common law remedies. SkorpiosProperties, Ltd. v. Waage, 172 Conn. 152, 156, 374 A.2d 165 (1976).
In 1986, the legislature enacted a second statutory provision dealing with the release of mortgages. 1986 Conn. Acts 86-341. That act, as amended, is now codified as Conn. Gen. Stat. § 49-8a. Sec. 49-8a, as discussed above, provides a detailed mechanism whereby an affidavit CT Page 8706 concerning payment can be filed in the town land records. It further provides that, "Such affidavit, when recorded, shall constitute a release of the lien of such mortgage." Conn. Gen. Stat. § 49-8a (f). The legislative history suggests that this provision was enacted in response to the perceived unresponsiveness of out-of-state mortgage companies in providing releases for paid off mortgages. The act was designed to allow a mortgagor to "file an affidavit on the land records which is in lieu of a mortgage release and the title will be deemed clear." H.R. Proc., 1986 Sess., p. 4168, remarks of Rep. William L. Wollenberg.
As mentioned, § 49-8a suggests no litigational means of enforcement. The recorded affidavit is to "constitute a release of the lien of such mortgage." Judicial recognition of this fact might well occur in the course of other litigation, such as a foreclosure action. (No foreclosure action has been brought here.) But as § 9-8, [49-8] (c) amply demonstrates, when the legislature wishes to authorize an action for damages for failure to deliver a release it knows how to do so. It has not done so here.
In determining whether statutes not expressly conferring private causes of action confer them by implication, our Supreme Court uses a three-pronged test. "`First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . .? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?'" Napoletano v. CIGNA Healthcare of Connecticut, Inc.,238 Conn. 216, 249, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103
(1997) (quoting Cort v. Ash, 422 U.S. 66, 78 (1975)). This test, applied to § 49-8a, yields mixed results.
The first prong of the Napoletano test is satisfied here. Sec. 49-8a
directly benefits the class of mortgagors who have paid their mortgage loans but have not received releases. The second and third prongs are, however, considerably more problematic. Not only is there no legislative history that the legislature affirmatively intended to create a private right of action, but the available legislative history suggests just the opposite. As mentioned, Rep. Wollenberg, the sponsor of the bill in the House, stated that the contemplated filing of an appropriate affidavit was intended to be "in lieu of a mortgage release." H.R. Proc., 1986 Sess., p. 4168. (Emphasis added.) Rep. Wollenberg's remarks suggest that legislature intended the filing of an affidavit to be an alternative to litigation rather than a precondition of a new cause of action. This legislative history, as well as the statutory text, further suggests that it is not consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. When § 49-8a is read CT Page 8707 in conjunction with § 49-8, it is evident that the purpose of §49-8a was to provide a nonlitigational alternative to the private cause of action long provided by § 49-8. The legislative history and the structure of these juxtaposed statutes make it reasonably clear that, on balance, a private cause of action does not exist under § 49-8a to enforce its provisions.
B. The Second Count.
The Second Count seeks a judgment "determining the rights of the parties in and to the Property pursuant to Conn. Gen. Stat. § 47-31" and a separate judgment "determining the Mortgage to be released of record pursuant to the provisions of Conn. Gen. Stat. § 49-8a" as well as compensatory and punitive damages. For reasons already discussed, no judgment determining the Mortgage to be released pursuant to § 49-8a will be given, since that statute does not confer a private right of action.
The quiet title action brought pursuant to Conn. Gen. Stat. § 47-31
stands on different footing. There is precedent from other jurisdictions holding that a quiet title action can be brought when a mortgage has been paid but not released. Annotation, What constitutes cloud on titleremovable in equity, 78 A.L.R. 24, 101 (1932) (collecting authorities). Sec. 47-31 (a) broadly states that a quiet title action may be brought "to clear up all doubts and disputes" concerning the title to the property. Connecticut is a title state, in which a mortgage is a legal instrument "adapted to convey a legal title." Munson v. Munson,30 Conn. 425, 437 (1862). "A cloud upon one's title is something which shows prima facie some right of a third person to it." Waterbury SavingsBank v. Lawler, 46 Conn. 243, 245 (1878). This means that if the plaintiffs' mortgage has indeed been paid, the prerequisites for a quiet title action are satisfied here.
This leads to the crucial question in the case. Has the mortgage been paid? The parties, understandably, view this question in personal terms. To the Gordons, the answer is plainly in the affirmative. They have done everything they should have. They retained experienced counsel, that counsel made appropriate inquiries, and the Gordons caused a check in the full amount of the outstanding mortgage to be sent to Mutual, the entity designated (or apparently designated) to receive such payment. To Tobias, in contrast, the answer is just as plainly in the negative. Because of Mutual's treachery, he has never received payment on his mortgage, and he has never signed a release.
Although Tobias's position is understandable, the Gordons' position is legally correct. Tobias had authorized Mutual to collect monthly payments CT Page 8708 on the note secured by the Mortgage and remit those payments to him. The Property was a newly developed condominium, obviously intended to be sold to a purchaser in the near future. Under these circumstances, the entity designated to collect payments on the note secured by the Mortgage was plainly authorized to receive payment of the outstanding amount of the Mortgage when the Property was sold. Tobias was an investor living in Florida and had no interest in managing such details for himself. Mutual was, both actually and apparently, his agent for receipt of the anticipated payoff of the Mortgage. The fact that Tobias's assignment was recorded; see Second National Bank v. Dyer, 121 Conn. 263, 268,184 A. 386 (1936); does not alter this fact. Notwithstanding the recorded assignment, Mutual remained Tobias's agent.
It is well established that when "payment is made, not directly to the holder of the mortgage, but to its agent designated as `servicer,' such a payment is effective and binding on the holder." 1 GRANT S. NELSON DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 6.6, at 506 (3d ed. 1993). Thus, "[i]f the payor can show that the one to whom he paid the money stood in the position of agent to the owner of the note, he is entitled to the benefit of the payment." Tedesco v. Bekker, 741 S.W.2d 896, 898
(Mo.Ct.App. 1987). See California Federal Bank v. Matreyek,10 Cal.Rptr.2d 58, 63 (Cal.Ct.App. 1992); May v. Ackerman,51 N.W.2d 87, 91 (Minn. 1951); Shriver v. Sims, 255 N.W. 60, 62
(Neb. 1934). This rule is a corollary of the more general proposition that, unless otherwise agreed, authority to receive payment includes authority to receive payment in full. RESTATEMENT (SECOND) OF AGENCY § 72(a) (1958).See Weiss v. District Title Ins. Co., 121 F.2d 900, 903 (D.C. Cir. 1941). Payment to an agent is, for legal purposes, payment to the principal and discharges the obligation. Manchester v. Sullivan, 112 Conn. 223, 225,152 A.2d 134 (1930).
Willard v. Buckingham, 36 Conn. 395 (1870), provides a helpful, if somewhat dated, precedent. Willard sold goods to a group of trustees, including Buckingham. The trustees were represented in the transaction by their agent, Foster. Foster, like Mutual in the present case, turned out to be dishonest. Foster told Willard that a receipt was necessary to obtain payment and then used Willard's receipt to obtain the purchase money from the trustees. Foster did not pay the money so received to Willard. The Supreme Court held that, in dealing with Willard, Foster "was acting . . . within the scope of his authority, and his acts and declarations must be considered as the acts and declarations of the defendants." Id. at 402. It reasoned that:
 If [Foster's representation] was false, it was the misrepresentation of the defendants themselves, through their own agent, and, as between themselves and third parties, they, and they alone, ought to CT Page 8709 suffer the consequences. Willard had a right to assume that it was true, and to act accordingly. In doing so he may have been too confiding, but we cannot for that reason say that he ought to be subjected to this loss. It seems more reasonable that a party employing an agent should be responsible for his misconduct.
 Id.
Willard's reasoning applies here. Tobias employed Mutual as his agent. The Gordons had a right to assume that this was true and to act accordingly. Between these competing innocent parties, "but seems more reasonable that a party employing an agent should be responsible for his misconduct." 36 Conn. at 402.
Tobias's special defenses must now be considered. None of the special defenses asserted with respect to the Second Count are persuasive. The First Special Defense is waiver. Tobias contends that the Gordons waived their rights by waiting as long as they did to file their affidavits. This claim finds no support in the evidence. The evidence establishes that the Gordons began to take legal steps to assert their rights — first by filing their affidavits and then by filing this legal action, shortly after they first learned that a problem existed. The Gordons are entirely without fault in this matter. The Second Special Defense is equitable estoppel. This special defense is predicated on the same factual claim that underlies the First Special Defense and is unpersuasive for the reasons just discussed. The Sixth Special Defense asserts that the owners of the second condominium unit are parties having an interest in this proceeding "and this matter cannot proceed to judgment without there [sic] being parties." This claim is unpersuasive. Conn. Gen. Stat. § 47-31
(b) requires the complaint in a quiet title action to "name the person or persons who may claim the adverse estate or interest." "So that the trial court can make a full determination of the rights of the parties to the land, an action to quiet title is brought against persons who claim title to or have an interest in the land." Swenson v. Dittner, 183 Conn. 289,292, 439 A.2d 334 (1981). The Second Amended Complaint complies with this requirement by naming Tobias as the defendant. Tobias is the only known person claiming an estate or interest in the Property adverse to the Gordons. The owners of the second condominium unit do not claim such an estate or interest. Moreover, it is not at all apparent that those owners will be in any way affected by this decision. The facts and equities in a hypothetical quiet title action brought by those owners may be quite different from the facts and equities presented here.
For these reasons, the court declares the title to the Property quieted in favor of the Gordons pursuant to Conn. Gen. Stat. § 47-31 free of all title or interest claimed by Tobias. CT Page 8710
D. The Third Count.
The Third Count seeks equitable remedies. This cause of action remains viable. Skorpios Properties, Ltd. v. Waage, supra, squarely holds that § 49-8 does not abrogate the common law remedies that pre-existed it. It follows as a matter of course that § 49-8a, which, unlike § 49-8, confers no private right of action at all — also leaves pre-existing remedies intact.
Under modern law, the prerequisites to equitable relief are performance in full of the obligation secured by the Mortgage and failure of the mortgagee to provide a release upon reasonable request. RESTATEMENT (THIRD) OF PROPERTY — MORTGAGES § 6.4(b). These prerequisites have been satisfied here. For reasons already discussed, the Mortgage has been paid in full. In addition, Tobias, the mortgagee, has failed to provide a release in spite of multiple requests to do so.
The Seventh and Eighth Special Defenses asserted with respect to the Third Count must now be considered. (The First and Second Special Defenses, applicable to all counts are unpersuasive for reasons already explained.) Neither of these defenses is sustainable.
The Seventh Special Defense claims laches. "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." Kurzatowski v.Kurzatowski, 142 Conn. 680, 684-85, 116 A.2d 906 (1955). Neither of these elements is satisfied here. The Gordons did not engage in inexcusable delay. After they first learned of a problem with the Mortgage in November 1997, they immediately contacted an attorney who began taking appropriate action within a matter of days. Although this lawsuit was not commenced until May 2000, after the First and Second Letters had been sent with no result, there is no evidence that any delay in bringing the lawsuit has prejudiced Tobias. The events that have prejudiced Tobias were Mutual's theft of his money at the time of the closing in February 1995 and Smith's death in August 1997. Both of these events occurred well before the Gordons had (or could reasonably have had) any inkling that something was amiss with their mortgage. Under the circumstances, there is no laches here.
The Eighth Special Defense alleges the running of the statute of limitations. The Defense, is, however, somewhat cagey about what exactly that statute of limitations is. The Defense initially posits that the plaintiffs' rights arose at the closing on February 2, 1995 and were first asserted in the Second Amended Complaint filed on May 23, 2001. It then claims that the Third Count is "barred by the applicable Statute of CT Page 8711 Limitations." It finally asserts that, "To the degree that Plaintiffs' claim sounds in contract, it is barred by General Statutes § 52-576
(a)."
There are two major problems with this Defense, aside from its vagueness as to what it considers "the applicable Statute of Limitations" to be. The first is that the plaintiffs' claim to equitable relief was not first stated in the Second Amended Complaint. It was, instead, first stated in their initial complaint served on May 8, 2000. The first count of that complaint expressly asks for "[s]uch other relief as in equity may pertain." Second, the Third Count does not "sound in contract." It is true that Skorpios Properties, Ltd. v. Waage, supra, describes the pre-existing form of action as "a common-law cause of action in the nature of a breach of contract based upon [the mortgagor's] covenant or agreement contained in the mortgage." 172 Conn. at 155. Under the idiosyncratic circumstances of the present case, however, there was no contract between the plaintiffs and the defendant in the first place. The defendant's obligations are equitable, arising from his holding of the Mortgage, and the plaintiffs' cause of action is one for equitable relief. An equitable proceeding of this description has deep roots in Connecticut law. See Robinson v. Cross, supra, 22 Conn. at 175. "[I]n an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired." Dunham v. Dunham,204 Conn. 303, 326, 528 A.2d 1123 (1987). Under these circumstances, the Eighth Special Defense cannot succeed.
Since, for reasons already discussed, the plaintiffs' mortgage has been paid, they are entitled to a decree directing Tobias to provide them with a release of the Mortgage. Robinson v. Cross, supra, 22 Conn. at 175. See RESTATEMENT (THIRD) OF PROPERTY MORTGAGES) § 6.4(b) (1997). Although the Third Count seeks compensatory and punitive damages, no evidence of such damages has been submitted. Under these circumstances, only equitable relief is appropriate.
C. The Fourth Count.
The Fourth Count alleges a CUTPA violation. The evidence fails to establish such a violation. "In determining whether a practice violates CUTPA we use the criteria of whether [it] offends public policy or comes within some established concept of unfairness, whether [it] is immoral, unethical, oppressive or unscrupulous or whether it causes substantial injury to consumers, competitors or other businessmen." PAR Painting,Inc. v. Greenhorne O'Mara, Inc., 61 Conn. App. 317, 328,763 A.2d 1078, cert. denied, 255 Conn. 951 (2001). (Internal quotation marks and citations omitted.) The evidence shows no such conduct here. Like the Gordons, Tobias is an innocent victim of Mutual. He has done CT Page 8712 nothing immoral, unethical, oppressive or unscrupulous or violative of public policy. He acquired the Mortgage by entirely lawful means well before the Gordons entered the picture. The only thing he has done to the Gordons is to assert his legal rights, which in a country governed by the rule of law he has a perfect right to do.
Under these circumstances, judgment must enter for the defendant on the Fourth Count.
V. CONCLUSION
Judgment shall enter for the defendant on the First Count of the Second Amended Complaint.
Judgment shall enter for the plaintiffs on the Second Count of the Amended Complaint quieting title to the Property in the plaintiffs free and clear of any title or interest claimed by the defendant.
Judgment shall enter for the plaintiffs on the Third Count of the Second Amended Complaint ordering Tobias to provide the Gordons with a release of the Mortgage.
Judgment shall enter for the defendant on the Fourth Count of the Second Amended Complaint.
Costs are awarded to the plaintiffs.
 ___________________________ JON C. BLUE JUDGE of the SUPERIOR COURT