Theresa ADAMS, et al., Appellants,

v.

Dr. Craig S. NYSTROM, Respondent.

No. CX–85–770.

Court of Appeals of Minnesota.

Sept. 10, 1985.

Review Denied Nov. 18, 1985.

Theresa Adams, pro se.

Norm Adams, pro se.

Daniel J. Bresnahan, Bloomington, for respondent.

Considered and decided by CRIPPEN, P.J., and SEDGWICK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

This appeal is from a judgment entered April 25, 1985 dismissing with prejudice appellants' pro se medical malpractice claim. We affirm.

## FACTS

No transcript on the date of trial was submitted. We piece the facts together from documentary evidence and from the trial court's order.

This action was commenced December 2, 1982. Appellants certified the case ready for trial June 1, 1984; however, discovery continued following respondent's certificate of non-readiness. The parties exchanged interrogatories and depositions were taken of appellant, Dr. Peter A. Hilger, and Dr. Arndt J. Duvall III. Dr. Duvall was respondent's expert. His deposition was noted in lieu of trial testimony but appellants refused to participate.

The parties were notified on November 9, 1984 that trial would be the week of November 19, 1984. On November 20, 1984, the matter was called for trial. A pretrial examination of appellants' expert witness, Dr. Hilger, subpoenaed without his consent, disclosed that he never agreed to testify on behalf of appellants regarding the respondent doctor's non-compliance with the standard of care. He stated he informed appellants by letter 10 days before trial that respondent did not commit medical malpractice and that his care and treatment of appellant-Theresa conformed with the standard of care recognized by the medical community applicable to this respondent's conduct. Appellants deny receiving this letter. They did, however, receive Dr. Hilger's consult form mailed on October 18th after appellants' visit two days earlier. This corroborated the doctor's testimony. With respect to appellant's complaint of inability to breathe from her left nostril following surgery, his report stated:

> I am uncertain as to the etiology of this problem. I told her husband that narrowing of this type can be post surgical, post traumatic or related to aging. In addition there are some people that have congenital deformity of this type. They asked if the nasal base had been narrowed by soft tissue and skin excision at the time of her surgery. There are no apparent scars in the nostril sill area and therefore I doubt if the base was narrowed.

## ISSUE

Did the trial court err in dismissing appellants' medical malpractice claim when appellants had no medical expert on the date of trial?

## ANALYSIS

■ The trial court properly denied a continuance. Appellants could not have been surprised by Hilger's testimony. Hilger saw Theresa Adams first on October 13, 1982 and he never told them he would or could provide expert testimony to support their claims of malpractice. He reiterated his opinion by letter and his report of October 18, 1984.

■ Appellants correctly state that a defendant's expert can be used to establish malpractice, *Reinhardt v. Colton*, 337 N.W.2d 88 (Minn.1983), citing *Anderson v. Florence*, 288 Minn. 351, 181 N.W.2d 873

(1970). In reviewing Dr. Duvall's testimony, there simply are no statements that the respondent doctor departed from the standard of care or caused the injury, nor can such an opinion be reasonably inferred from his testimony.

### DECISION

We affirm the trial court's dismissal with prejudice.

NIERENGARTEN, Judge, concurring specially.

I concur in the result reached by the majority because of the broad discretion accorded the trial court.

I recognize the fact that appellants' expert witness never agreed to testify on behalf of appellants regarding respondent's lack of standard of care. But because of appellants' pro se status and because of their claim of not receiving their expert's letter, it would have been more desirable for the trial court to have granted a continuance for a reasonable length of time during which period appellants would have had an opportunity to locate another expert witness. Although this matter had been initiated two years earlier, appellants were notified of their expert's position only 30 days before trial. Such a continuance would not have created an unnecessary delay. The primary factor to be considered is prejudice to the parties. Respondent doctors could hardly claim prejudice as a result of such a short continuance.