**Franklin J. BUSH, Appellant,**

v.

**Robert B. WINTER, et al., Respondents.**

**No. C3-86-1723.**

Court of Appeals of Minnesota.

March 17, 1987.

Franklin J. Bush, pro se.

W.D. Flaskamp, Robert E. Salmon, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Winter & Minneapolis Clinic of Psychiatry and Neurology.

Considered and decided by WOZNIAK, P.J. and LESLIE and RANDALL, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Franklin Bush appeals from the judgment dismissing with prejudice and on the merits his medical malpractice claims against Dr. Robert B. Winter and the Minneapolis Clinic of Psychiatry and Neurology. We affirm.

## FACTS

Franklin Bush developed scoliosis when he was eight years old. In December 1972 and January 1973, when he was sixteen, Bush was treated for his scoliosis by Dr. Robert B. Winter. The treatment involved a spinal fusion, which is a surgical procedure designed to reduce the curve in the spine. Prior to the operation, x-rays were ordered and Bush was referred to a neurol-

ogist for a work-up. No myelogram was administered, however. After the operation, Bush continued to complain to Winter of back pain, muscle spasms, and weakness in his right hand.

In 1978, his condition had deteriorated to the point where he had lost all sensation in his face, and his right eye was completely paralyzed. Bush then attended the Mayo Clinic where a myelogram was administered, revealing that he had hydromelia, a neurological condition apparently caused by a spinal cyst. Bush claims his physician at the clinic told him that his condition had been previously misdiagnosed and that a myelogram should have been administered before any operation was performed. Bush underwent two brain operations at the Mayo Clinic, but he claims that because his condition had been misdiagnosed and untreated for so long, the damage to his spinal cord was irreversible. After the second brain operation, Bush suffered a series of strokes which left him paralyzed from the chest down.

In 1980, Bush initiated this malpractice action. Bush retained a neurologist to serve as a medical expert. In April 1985, he disclosed this neurologist and another physician as his medical experts who would testify that Winter was negligent for failing to diagnose the spinal cyst. After a pretrial hearing in the fall of 1985, trial was set for May 12, 1986. On March 24, 1986, however, Bush's attorney sought leave to withdraw, apparently because Bush's medical experts had indicated an unwillingness to testify. The trial court allowed counsel to withdraw and continued the trial for six months, giving Bush 90 days to retain new counsel and to obtain and disclose another medical expert. The 90 days passed and Bush failed to comply with the court's order. Winter then brought a motion to dismiss which the court heard on September 12, 1986. At this time, Bush had neither retained counsel nor obtained another expert. The court dismissed the malpractice claims with prejudice and on the merits.

## ISSUE

Did the trial court abuse its discretion in dismissing Bush's medical malpractice claims where he failed to obtain and disclose his medical expert?

## ANALYSIS

Minnesota Rule of Civil Procedure 26.-02(4)(A)(i) permits discovery of the expert witnesses a party expects to call to testify at trial. Furthermore, the Fourth Judicial District's Special Rule of Practice 4.04(d) requires litigants to disclose the expert witnesses who may be called to testify and the particular areas of expertise which the witnesses will address. Timely disclosure permits discovery of facts which will enable litigants to adequately prepare for trial free from the element of surprise. *Gebhard v. Niedzwiecki*, 265 Minn. 471, 476, 122 N.W.2d 110, 114 (1963). Bush properly complied with these rules, disclosing the names of two experts who might be called to testify about Dr. Winter's alleged negligence. Shortly before trial, however, neither expert was willing to testify, and Bush thereafter failed to obtain another medical expert.

Expert testimony is crucial to Bush's claim of negligent treatment because the issues presented are not within the common knowledge of laymen. *See Reinhardt v. Colton*, 337 N.W.2d 88, 94–95 (Minn. 1983). In its memorandum accompanying the order to dismiss the claims, the trial court noted that the nature of the case required expert medical testimony to prove Bush's case. Bush argues he should be allowed to subpoena and to compel testimony from the medical expert he originally retained to testify on his behalf.

In *Anderson v. Florence*, 288 Minn. 351, 181 N.W.2d 873 (1970), a medical malpractice action, the supreme court held that a trial court could compel a *defendant* physician, when qualified as an expert witness, to answer questions calling for his expert medical opinion. *Id.* at 352, 181 N.W.2d at 874. We have found no Minnesota case, however, specifically addressing the question whether a litigant has an absolute

right to compel an unwilling, *non-party* expert to give an opinion on facts outside the expert's personal knowledge. Other jurisdictions are split on this issue. *See Mason v. Robinson*, 340 N.W.2d 236, 240–42 (Iowa 1983) (discussing the cases and controversy surrounding the question of compelled expert testimony).

■ In the present case, this issue was not preserved for appeal. From the record before us, Bush made no attempt to subpoena his expert at any time before or during the continuance. Furthermore, he did not raise the issue before the trial court at the hearing on the motion to dismiss. While some latitude is accorded persons appearing *pro se*, Bush is still not relieved of his burden of preserving issues for appeal. *See Noltimier v. Noltimier*, 280 Minn. 28, 29, 157 N.W.2d 530, 531 (1968). "Error cannot be presumed." *Id.*

For whatever reasons, Bush's experts have declined to testify in this action. The trial court continued the trial for six months, giving Bush 90 days to locate and disclose another expert. *Cf. Adams v. Nystrom*, 373 N.W.2d 666, 668 (Minn.Ct. App.1985) (Nierengarten, J., specially concurring) (expressing the desirability for the trial court to have granted a continuance for a reasonable length of time during which appellants would have had an opportunity to locate another expert witness, where trial court dismissed their medical malpractice claims because they had no medical expert on the day of trial), *pet. for rev. denied* (Minn. Nov. 18, 1985). Bush failed to do so, and he still had not retained an expert when the trial court heard the motion to dismiss in September 1986—less than six weeks before the trial was scheduled to begin.

■ Generally, a trial court's dismissal of an action for procedural irregularities will be reversed only if it is shown that the trial court abused its discretion. *Dennie v. Metropolitan Medical Center*, 387 N.W.2d 401, 404 (Minn.1986). This is the standard applied to sanctions for a party's failure to disclose information regarding expert wit-

nesses. *Id.* Bush failed to proceed properly by providing the required information.

Bush also argues that he should be allowed to proceed pro se and prove his case using publications written by the defendant. *See Reinhardt*, 337 N.W.2d at 95 (a plaintiff in a medical malpractice action may establish his claim with expert testimony elicited solely from the defendant doctor). Bush may, of course, represent himself, but he failed to file the publications with the court below. The publications are not part of the record and cannot be considered on appeal. *Hasan v. McDonald's Corp.*, 377 N.W.2d 472, 473 (Minn.Ct.App.1985).

■ Finally, Bush argues that he is entitled to relief because the defendant sent a letter allegedly threatening him for pursuing his malpractice claim. We have considered this argument and find no merit in it. Under the circumstances, the trial court did not abuse its discretion in dismissing the malpractice claims.

**DECISION**

Accordingly, the trial court's dismissal of the malpractice claims with prejudice and on the merits is affirmed.

Affirmed.