William **THORSON, et al., Respondents,**

v.

**RICE COUNTY DISTRICT ONE HOSPITAL, Petitioner,**

**Hanscom Ambulance Company, Respondent.**

**No. C7–88–1745.**

Supreme Court of Minnesota.

March 17, 1989.

Farrish, Johnson & Maschka, Kenneth R. White, Mankato, for petitioner.

Larry J. Rietz, Owatonna, for William Thorson, et al.

John A. McEachron, Jr., Bloomington, for Hanscom Ambulance Co.

KELLEY, Justice.

Petitioner Rice County District One Hospital seeks a writ of prohibition restraining the enforcement of an order issued by a Rice County district judge, who, in this medical malpractice case commenced by William and Nancy Thorson (respondents), granted to the plaintiffs an extension of time within which to provide the affidavit of expert identification required by Minn. Stat. § 145.682, subd. 4 (1988), notwithstanding that the time limit for doing so had long since expired.[1] Though we affirm the trial court's extension order and discharge the writ of prohibition, we do so for reasons differing from those given by the trial judge.

On November 24, 1984, respondent William Thorson sustained serious injuries while cutting trees. Initially he was transported by ambulance from the accident scene to petitioner's hospital. Dr. Ralph Duda, a physician then employed by petitioner, examined Thorson in the hospital's emergency room. Later, after he had been transferred to the University of Minnesota Hospitals, Thorson underwent surgery by Dr. James Ogilvie. Notwithstanding his treatment, Thorson became a paraplegic. He and his wife in this lawsuit claim that Dr. Duda was negligent in the emergency room, and that as a result, that negligence was a substantial contributing cause of Thorson's present disability.

Sometime before October 1985, respondents retained Minneapolis attorney Reed

1. Petitioner moved the trial court for a dismissal approximately 18 months after commencement of the suit. Respondents countered with a motion to extend the time for production of the affidavit of expert identification beyond the statutory 180 days from institution of suit. Even though the respondents' motion was made many months after expiration of the 180-day period within which a medical malpractice plaintiff must furnish the affidavit required by Minn. Stat. § 145.682, subd. 4 (1988), the trial court denied the hospital's motion and granted the Thorsons' motion.

Thereafter Petitioner simultaneously sought a writ of prohibition in the court of appeals, and filed a petition for accelerated review in this court, Rule 118, Minn.R.Civil App.Pro. Our grant of accelerated review brought the writ of prohibition before us.

Mackenzie to represent them in pursuing their claims against the hospital. Shortly thereafter, Mackenzie met with petitioner's attorney. Together, the two attorneys reviewed an investigation of Dr. Duda's actions, which apparently had been conducted internally by, or on behalf of, the hospital. While that investigation might have lent support to the conclusion that Dr. Duda may have been negligent, the more difficult issue of causation remained unresolved, to-wit, whether his actions, if negligent, had been a substantial contributing cause of William Thorson's paraplegia. Each lawyer agreed to independently conduct further investigation but to exchange information as the independent investigation of each proceeded.

The next significant event occurred on November 24, 1986, exactly two years after Thorson's accident, when a summons and complaint together with the affidavit of expert review required by Minn.Stat. § 145.682 (1988) were served on petitioner.[2]

Simultaneously with the timely service of its answer, the hospital also served interrogatories requesting the additional information required to be provided by a malpractice suit by plaintiff. Minn.Stat. § 145.682, subd. 2 and 4 (1988). The required information may be provided by ei-

ther affidavit or in interrogatory answers, and relates to expert witness identity, opinions the named experts have respecting negligence and causation factors, and, the basis for the opinions.[3] During December 1986 and January 1987, the lawyers representing petitioner had several communications with Mackenzie. Other than answering the interrogatories on February 24—stating that no expert had been selected, no further answers nor any affidavit containing the statutorily required disclosures were filed by plaintiffs' attorneys up until the time the cross motions now before us were made in the trial court.

In March 1987, Dr. Ogilvie informed Mackenzie that while, in his opinion, Dr. Duda's emergency room treatment of Thorson might have been incorrect or insensitive, he was unable to say that Thorson had sustained any additional injury as the result of that treatment. The record before us, consisting mainly of affidavits, is unclear as to whether Mackenzie at that time relayed these conclusions of Dr. Ogilvie to petitioner's attorney. In fact, the record is silent with respect to any type of communication passing between Mackenzie and petitioner's counsel until the former withdrew from representing the respondents. In the interim, in the latter part of May 1987, the 180–day period within which Minn.Stat.

2. By that time Dr. Duda had left the hospital's employment and resided outside of Minnesota, and, therefore, was not subject to the Minnesota court's jurisdiction. Petitioner, however, was alleged to be vicariously liable for damages caused by the negligence of Dr. Duda, its employee. Also named as a defendant in that suit was Hanscom Ambulance Service. Since inception of the lawsuit, it has been stipulated that that company will be dismissed from the action.

3. The relevant provisions of Minn.Stat. § 145.682 read:

Subd. 2. **Requirement.** In an action alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must: (1) unless otherwise provided in subdivision 3, paragraph (b), serve upon defendant with the summons and complaint an affidavit as provided in subdivision 3; *and (2) serve upon defendant within 180 days after commencement of the suit an affidavit as provided by subdivision 4.*

Subd. 4. **Identification of experts to be called.** The affidavit required by subdivision 2, clause (2), must be by *the plaintiff's attorney* and state the *identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.* Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and served upon the defendant within 180 days after commencement of the suit against the defendant.

The parties or the court for good cause shown, may by agreement, provide for extensions of the time limits specified in subdivision 2, 3, or this subdivision. Nothing in this subdivision may be construed to prevent either party from calling additional expert witnesses or substituting other expert witnesses. (Emphasis supplied).

§ 145.682, subd. 4 required the plaintiffs to furnish the required information expired. Preceding its expiration, no express agreement existed between counsel, authorizing, nor had Mackenzie filed, an appropriate motion with the trial court seeking, extension of the 180–day limit.

Early in September, Mackenzie advised William Thorson by letter he was no longer interested in proceeding further with the case, and suggested that another attorney might be willing to proceed with it, and that he, Mackenzie, would cooperate with any successor lawyer chosen by the respondents. This letter made no reference to the 180–day notice requirement, nor did it advise the Thorsons that the time period had already elapsed.

On September 25, 1987, respondents consulted their present counsel, Larry J. Rietz, relative to his willingness to further prosecute their claims. Within two days thereafter, Rietz contacted petitioner's attorney by telephone. During the course of that telephone conversation, Rietz informed petitioner's counsel that it was likely he would undertake representation of the Thorsons, and that he was proceeding to acquire the case file from Mackenzie. During this conversation, petitioner's attorney reiterated an offer, which he had previously extended to Mackenzie, that he was interested in discussing settlement without incurring additional expenses relative to extensive discovery as soon as Rietz furnished him a medical report supporting Thorson's causation claim. Nothing in the record before us suggests that the hospital's attorney raised or suggested that the hospital then relied, or intended to rely, on the Minn.Stat. § 145.682, subd. 4, statutory defense.

Thereafter, Rietz kept petitioner's counsel informed with respect to progress experienced by him in obtaining medical evidence to support the claim. In the initial telephone conversation in September, Rietz had indicated that he intended to proceed by first submitting records and x-rays to a radiologist whose opinion, together with those records, he would submit later to a neurosurgeon. To do so, he observed,

might entail a passage of some extended period of time in order that the necessary arrangements could be made and he could receive back definitive reports. Petitioner's attorney made no demurrer to that procedure. After he had received a favorable advisory opinion from a radiologist, Rietz, by letter on November 24, 1987, provided petitioner's attorney with a progress report indicating that he had forwarded his client's medical records to a neurosurgeon together with the radiologist's report, and that he would expect "to get back" to the attorney within 60 days. Later, when he learned the neurosurgeon would be unable to provide him with a written report within the 60–day period previously indicated, Rietz by telephone notified petitioner's counsel of the expected delay. To this point petitioner's attorney had never raised the issue of untimely failure to file the identification of expert affidavit, nor did he object when plaintiff's counsel advised him in these communications of the progress of the investigation and the time schedule for its completion.

Dr. W.S. Pollard, the neurosurgeon to whom William Thorson's medical records had been submitted, furnished Rietz with an opinion that Thorson's injuries were causally related to Dr. Duda's negligent actions. Shortly after receiving it, Rietz on March 2, 1988, supplemented the original interrogatory answers, which had been served by Mackenzie on the hospital's attorneys in February of the previous year, and served the supplemental answers on petitioner's counsel. The answers as supplemented provided the hospital's counsel with all of the information required by Minn.Stat. § 145.682, subd. 4.

Petitioner claims its attorney and Rietz had a telephone conversation on the same day in which the subject of the failure of Mackenzie and Rietz to timely provide answers to expert interrogatories containing the statutorily mandated disclosures was discussed, and, at that time he apprised Rietz that he intended to move the court for dismissal based upon the failure. The

Hospital's motion seeking dismissal[4] and respondents' motion for extension were heard by the court at the same time. The trial court's order granting the requested extension spawns this application for a writ of prohibition.

The Hospital asks us to issue a writ of prohibition to the trial court to bar enforcement of its order extending the time within which to furnish answers to expert interrogatories, and to direct entry of judgment in favor of it. Its argument is based upon Minn.Stat. § 145.682, subd. 4 which purports to mandate dismissal if the parties neither have agreed to an extension nor a court order has been obtained granting additional time within which to answer for "good cause shown." The respondents, of course, defend the trial court's order by insisting that notwithstanding the 180–day period had elapsed months before, the statute gave the court authority to extend the period for "good cause shown." The broader issue posed by those conflicting positions is whether this case may proceed to trial for resolution on the merits or whether dismissal with prejudice should now terminate it. Resolution of that issue, in turn, affords us an option to decide whether a construction analysis of Minn. Stat. § 145.682, subds. 4 and 5 (1988) is either necessary or appropriate. We conclude that it is not. It is unnecessary because we conclude that as a matter of law that petitioner is now equitably estopped to rely on the mandatory dismissal remedy of the statute.[5]

The conduct of a party engendering an equitable estoppel is not limited to written or spoken words, but, as well, may include other affirmative actions of the party, or the party's silence or failure to act when normally action might be expected. *See, e.g., Dimond v. Manheim*, 61 Minn. 178, 182, 63 N.W. 495, 497 (1895); *May v. Ackerman*, 235 Minn. 273, 281, 51 N.W.2d 87, 93 (1951). Neither Mackenzie nor Rietz contends that during Mackenzie's representation of respondents that petitioner's attorney ever specifically by written or spoken word relinquished the hospital's right to demand the statutory forfeiture for noncompliance with the 180–day requirement. Though the respondents cannot assert the petitioner is estopped by any specific oral or written disclaimer of intent not to rely on the statute's bar, they do contend that by their silence and failure to take actions to enforce their client's statutory rights, petitioner's attorneys have misled them. Considering the circumstances of the relationship existing between the attorneys for the parties, respondents claim their attorneys' reliance upon that silence and inaction was reasonable, and that as a result, they have sustained detriment.

■ As part of their estoppel argument,[6] respondents emphasize the existence of a longstanding professional relationship between Mackenzie and R.G. Johnson, the hospital's attorney, which, during its course, had ripened into one of mutual trust and respect. Because the two had commenced their investigation of the treatment by Dr. Duda in 1985, and had at that time agreed to cooperate and exchange information, respondents now claim Mackenzie was justified in assuming that Johnson had no intent to rely upon the 180–day limitation. In our opinion, however, even assuming the existence of such a close relationship, the factual circumstances sur-

---

4. Actually, the Hospital's motion sought summary judgment rather than dismissal as characterized in the brief.

5. It is inadvisable to analyze the statute because respondents', in neither brief nor oral argument, have challenged the statute on grounds that it may violate the separation of powers doctrine, or that its enforcement would violate their equal protection rights. Whether such a challenge, if made, would be successful is debatable. To base our decision in this case on construction of a statute, which some professionals contend may be vulnerable to constitutional challenge, would seem to us to be inap-

propriate when it appears unnecessary to the resolution of the ultimate issue.

6. Though not specifically denominated as such in their brief, in actuality the equitable estoppel argument is endemic to the "good cause shown" argument which respondents advanced in the trial court when seeking an extension of the 180–day period. The trial court granted the extension "for good cause shown" but did not specifically address respondents "misleading" and "reliance" argument, both of which are components of equitable estoppel and both of which were advanced by respondents in the trial court as well as here.

rounding the representation afforded by each to his clients during the progress of this case still falls far short of justifying a court holding that the hospital is now estopped from asserting this defense as a matter of law. In October 1985, when Mackenzie and Johnson commenced their investigations and agreed to "share" information, Minn.Stat. § 145.682 (1988) did not exist. It did not become effective until August 1, 1986. Thus, whatever may have transpired between the two lawyers before that date cannot support any type of an estoppel claim. Nor does anything in the record which occurred from the effective date of the statute until suit was commenced in late November of that year lend support to such a claim: the record contains nothing indicating any exchange of investigation information or settlement negotiations during that period. The affidavits on file fail to indicate that after suit had been filed that Johnson did or said anything to Mackenzie that would justify the latter in concluding the hospital would not rely upon the statute. In fact, Mackenzie in his affidavit makes no claim that he did. When Mackenzie failed to file timely answers to interrogatories, Johnson promptly reminded him of his default, an action that appears inconsistent with any claim of estoppel. Additionally, the record reveals that Mackenzie received a written medical report from Dr. Ogilvie negating causation sometime in the spring of 1987, perhaps even within, but if so, very near the expiration of the statutory limitation. Though Mackenzie must have realized that the statute mandated dismissal with prejudice if the affidavit of expert identification was not timely filed and that it was highly unlikely he could get a favorable expert medical report in the short remaining time, he took no steps to verify his understanding of Johnson's alleged "implicit agreement," nor did he move the court for extension of the time within which to comply. We note, parenthetically, that Minn. Stat. § 145.682 (1988) places no additional onus on the hospital to make any additional further demands within the 180–day period. In short, the record fails to demonstrate any action on the part of the hospital's attorney that would mislead Mackenzie into having any reasonable belief that the hospital would not at the appropriate time assert its rights following noncompliance with the statute. Accordingly, we reject any contention that the existing relationship between Johnson and Mackenzie supports the respondents' claim that their original attorney had been misled with respect to the hospital's ultimate reliance on the mandatory dismissal provisions of the statute.

■ However, when we examine what transpired after Mackenzie withdrew from the case in September 1987, and after Rietz commenced to represent the respondents, we are constrained to hold that as a matter of law the hospital is now estopped to assert a defense based upon Minn.Stat. § 145.682, subd. 4. Petitioner's attorneys remained silent at times it would have been normal for them to have asserted the hospital's statutory right to claim a mandatory dismissal, and, indeed, in our opinion, it is not inappropriate to characterize the posture of petitioner's attorneys when dealing with Rietz from September 1987 to March 1988 as being "misleading," to the extent of lulling him into a not unreasonable belief that the hospital meant to resolve the case on the merits—and not by reliance upon the mandatory dismissal provisions of the statute. In September 1987, at the time of the initial telephone conversation with Rietz, petitioner's attorney provided no indication that his client intended to rely on the statutory defense, which had ripened weeks earlier upon expiration of the 180–day period without compliance: instead, in a gesture completely at odds with such an intention he reiterated the offer, which almost two years before he had extended to Mackenzie, to the effect the hospital was interested in discussing settlement before incurring extensive expenditures of time and money in discovery.[7] Thereafter, Rietz, either by telephone or letter, kept petitioner's attorneys apprised of his progress in securing Thorson's legal and medical files, having the medical files examined by a radiologist, and, after receiving that report, having arranged for the

7. Though the time period had expired, the action was still viable because it had not been dismissed. Minn.Stat. § 145.682, subd. 6, provides that failure of the plaintiff to furnish the

examination by the neurosurgeon. During the months that Rietz was periodically in contact with petitioner's attorneys at no time did the latter once demur or in any way suggest that the effort and expense to which Rietz was going was all in vain because months before the statutory limitation within which to furnish the results of such efforts had expired. It was not until after substantially all of Rietz's investigation had been completed and only after Rietz had secured an expert's medical opinion from a neurosurgeon willing to testify to the existence of a causal connection between Dr. Duda's treatment and William Thorson's paraplegia did the hospital, through the attorneys who had represented it since the inception of the claims, for the first time indicate that it intended to raise the defense of Minn.Stat. § 145.682, subd. 4 (1988) and announce its intention to schedule a motion for dismissal based thereon. Estoppel ordinarily is a fact question for jury resolution. *See O'Donnell v. Continental Casualty Co.,* 263 Minn. 326, 333, 116 N.W.2d 680, 684 (1962). But when the operative facts are, as here, undisputed, a court may resolve the issue as a matter of law. By their silence in not asserting an existing statutory defense in September of 1987, by their representation that they were interested in talking settlement whenever Rietz was ready, and by standing mute when they knew Rietz was expending time and money to establish that his client had a "case" on the merits, petitioner's attorneys waived their client's statutory right, and, as a result, we hold petitioner is now equitably estopped from asserting it at this late date as a matter of law.

Petition for writ of prohibition quashed.

KEITH, J., took no part in the consideration or decision of this case.

affidavit of expert review within the 180–day period "results, *upon motion,* in mandatory dismissal with prejudice * * *." (Emphasis supplied). Because no motion had been made, the case was still pending during the course of Rietz's investigation during the fall and winter of 1987–1988.