**Therese SORENSON and the Heirs and Next of Kin of John Sorenson by their trustee, Kevin Sorenson, Appellants,**

v.

**ST. PAUL RAMSEY MEDICAL CENTER, et al., Rebecca Brick, Certified Nurse Midwife, possibly known as B. Birch, and Dr. Gordon M. Ditmanson, et al., Respondents,**

**Dr. John Doe, et al., Defendants.**

**No. CX–89–504.**

Court of Appeals of Minnesota.

Aug. 29, 1989.

Review Granted Oct. 19, 1989.

William E. Jepsen, Karon, Jepsen & Daly, St. Paul, for appellants.

Pat J. Skoglund, Jardine, Logan & O'Brien, St. Paul, for St. Paul Ramsey Medical Center, et al., respondents.

Clarance E. Hagglund and Britton D. Weimer, Hagglund Law Firm, Minneapolis, for Rebecca Brick, respondent.

Kathleen R. Otto, Geraghty, O'Loughlin & Kenney, St. Paul, for Dr. Gordon M. Ditmanson, et al., respondents.

Heard, considered and decided by HUSPENI, P.J., and SCHUMACHER and THOREEN *, JJ.

## OPINION

HUSPENI, Judge.

Appellants contest the trial court's October 24, 1987 determination that they did not comply with the Minn.Stat. § 145.682 (1986) requirement of expert review of medical malpractice claims. Based on the trial court's determination, the various respondents were dismissed pursuant to court orders issued between October 24, 1987 and January 30, 1989. On February 7, 1989, final judgment pursuant to Minn.R. Civ.P. 54.02 was entered. Appellants maintain that they complied with the statutory requirements. We agree and reverse.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

On September 7, 1984, Therese Sorenson's son John was stillborn.

In September, 1986, appellants Kevin Sorenson, as trustee for the heirs and next of kin of the deceased John Sorenson, and Kevin's wife Therese Sorenson commenced a medical malpractice action and included service of an affidavit indicating that the verification pursuant to Minn.Stat. § 145.682 (1986) was forthcoming. Under section 145.682 medical malpractice plaintiffs, within 180 days of initiating such an action, must indicate by affidavit or answers to interrogatories the identities of any expert witnesses plaintiffs expect to call, the essential facts and opinions about which the expert would testify, and a summary of the grounds for the expert's opinion(s). By mid-November service was completed upon respondents St. Paul–Ramsey Hospital (Hospital), midwife Rebecca Brick (Birch), doctors Barbara Bezdicek, Gordon Ditmanson and Michael Koszalka, as well as nurses Beth Rykken and Marcia Pershing.

In an affidavit dated October 7, 1986, appellants' counsel indicated that an expert had reviewed the medical records relevant to appellants' claims. The affidavit also indicated that appellants' counsel reasonably believed that the expert's opinions regarding the negligence of one or more of the respondents would be admissible at trial. On October 10, 1986, the Hospital and Bezdicek served appellants with interrogatories. Subsequently, by a January 1987 letter, the Hospital, Bezdicek, Rykken and Pershing indicated that they did not believe that appellants' October 7, 1986 affidavit was sufficient to meet the requirements of Minn.Stat. § 145.682. These respondents requested either a supplemental affidavit or responses to the interrogatories, either of which could be used to meet the statutory requirements.

A supplemental affidavit, submitted by appellants' counsel and dated February 6, 1987, stated in part:

(5) That [appellants' expert] will base his opinions upon the facts contained in the medical records of Theres[e] Sorenson and John Sorenson at St. Paul–Ramsey Hospital and the death certificate and autopsy of John Sorenson.

(6) At the present time your affiant believes that [appellants' expert] will testify that the facts indicate that Theres[e] Sorenson presented herself at the hospital at approximately 12:25 p.m. on September 7, 1984, with a history of eight hours of persistent abdominal pain and was found to be contracting every one and one-half minutes with contractions lasting almost one minute. The nurse-midwife [ ] and [a doctor] both examined Theres[e] Sorenson. There [were] obvious symptoms of fetal distress and probable abruptial placenta that should have been identified by [the] nurse-midwife [ ] and [the doctor]. Each of them failed to properly evaluate Theres[e] Sorenson's condition and failed to properly care [for] and treat Theres[e] Sorenson thereafter. Shortly thereafter, it should have been apparent that the contractions were abnormal and that the fetal heart rate was abnormal and that there should have been timely intervention by a physician but there was not. At some point in time between 12:25 p.m. and 1:40 p.m., [Therese Sorenson] was also examined by either [a second doctor] or [a third doctor] while there were still viable heart tones for John Sorenson, and they failed to properly diagnose an abruptial placenta and fetal distress and failed to take proper steps to deliver John Sorenson prior to his death.

(7) That the admission of Theres[e] Sorenson to the hospital was under the supervision of [the second doctor] and that he failed to identify the problems set forth above. That [the first doctor] was present and examined Theres[e] Sorenson at a time when the fetal heart tones were still in a range which would indicate that Theres[e] Sorenson's fetus was viable and being supplied with blood and oxygen, but failed to diagnose the problems which were developing and failed to timely intervene.

(8) That [the second doctor] was in charge of supervision of [the] nurse-midwife and [the first doctor] and failed to

properly supervise and direct them in the provision of care and identification of the complications that were presented to them by Theres[e] Sorenson.

(9) That [the third doctor] was the staff doctor in charge of the entire supervision of the care of Theres[e] Sorenson and failed to have her properly supervised and evaluated.

(10) That each of the above acts and failures to act by the doctors and nurse-midwife [was] contrary to the standard of care that should have been provided and that these breaches of [the] standard of care were the direct cause of injury to Theres[e] Sorenson and [of] the death of John Sorenson.

(11) That the grounds for the opinions of [appellants' expert] are his background, training and experience as a medical doctor specialized in the area of obstetrics and gynecology, and subspecialized in the area of paranatology[,] [t]ogether with the medical records, death certificate and autopsy report referred to in the paragraph above.

Also on February 6, 1987, Ditmanson and Koszalka served appellants with a motion to compel appellants to answer interrogatories. Appellants answered the interrogatories of Bezdicek and the Hospital on February 23, 1987, with information substantially equivalent to that in the supplemental affidavit.[1]

Motions of respondents Ditmanson, Koszalka and Birch for "summary judgment" were granted by the trial court. The parties' "summary judgment" briefs and affidavits addressed appellants' expert review obligations under Minn.Stat. § 145.682. The memorandum accompanying the orders granting "summary judgment" stated that appellants failed to provide a "summary of the grounds for [the experts'] opinion[s]" and observed the statutory requirement "to dismiss [appellants'] case."

Subsequently, the remaining respondents moved for dismissal "pursuant to Minn. Stat. § 145.682" and appellants moved for vacation of the "summary judgment" orders. Respondents Pershing and Rykken were dismissed without objection by appellants. When appellants did not appear for the hearing on their vacation motion, that motion was denied and the remaining respondents were dismissed.

Finally, the trial court dismissed certain fictitious defendants and again individually re-dismissed all claims against all defendants, stating that judgment was to be final under Minn.R.Civ.P. 54.02.

## ISSUES

1. What is the standard of review?

2. Did the trial court err in concluding that appellants failed to meet the requirement for medical malpractice claims of expert review?

## ANALYSIS

### I.

■ While the parties and the trial court both referred to the October 24, 1986 order as a "summary judgment," an actual summary judgment was neither sought nor obtained. Instead, respondents argued that appellants failed to meet the statutory requirements of Minn.Stat. § 145.682, subds. 2 and 4 (1986), and that dismissal was mandated under Minn.Stat. § 145.682, subd. 6 (1986). The trial court agreed.

Respondents actually sought, argued for, and obtained a statutory dismissal based on appellants' failure to meet the requirements of Minn.Stat. § 145.682. This fact is reflected by the trial court's January 20, 1989 order stating that appellants' claims

against [respondents] Dr. Ditmanson and Dr. Koszalka and [respondent] Rebecca Birch are *dismissed* with prejudice pursuant to the court's order of October 24, 1987 * * *.

---

1. We note that the record indicates some confusion regarding whether certain respondents received appellants' "supplemental affidavit." However, the trial court file includes appellants' interrogatory answers and the attached affidavit of service indicates that all respondents were served therewith.

(Emphasis added.) *See also Thorson v. Rice Co. Dist. One Hosp.*, 437 N.W.2d 410, 413–14 (Minn.1989). (Based on plaintiffs' alleged failure to comply with section 145.682, defendant sought "summary judgment" but the supreme court referred to the motion as one for "dismissal" under the statute.)[2]

■ The standard of review for information submitted under Minn.Stat. § 145.682 has not previously been addressed. However, for medical malpractice cases prior to the effective date of section 145.682:

> The general rule in Minnesota is that a trial court's dismissal of an action for procedural irregularities will be reversed on appeal only if it is shown that the trial court abused its discretion. Specifically, this is the standard applied to sanctions for a party's failure to disclose information regarding expert witnesses.

*Dennie v. Metropolitan Medical Center*, 387 N.W.2d 401, 404 (Minn.1986) (citations omitted); *see also Bush v. Winter*, 402 N.W.2d 229, 231 (Minn.Ct.App.1987). Section 145.682

> regulat[es] malpractice actions against health care providers, provid[es] certification of expert review * * * [and] requir[es] disclosure of experts * * *.

*See* Minn.Stat. § 145.682 (1986); Preamble to 1986 Minn.Laws ch. 455. However, it neither implicitly nor explicitly alters the *Dennie* standard. Therefore, we conclude that an abuse of discretion standard is appropriate when reviewing the information required under Minn.Stat. § 145.682.[3]

## II.

■ Appellants' complaint alleges that "The care [respondents] provided to [Therese Sorenson] * * * was unreasonable and negligent." The supreme court has declared that "[plaintiffs,] in order to prove *negligence* in a malpractice action,

must offer expert medical testimony * * *," *Silver v. Redleaf*, 292 Minn. 463, 465, 194 N.W.2d 271, 272 (1972) (emphasis added), except "where the facts to be determined are within the common knowledge of the jury * * *." *Bauer v. Friedland*, 394 N.W.2d 549, 553 (Minn.Ct.App.1986). In this case, the trial court explicitly stated:

> The circumstances of this case call for expert medical opinion since [appellants'] claim with regard to negligent treatment, involving the failure to diagnose *placenta abruptio*, involves an area outside the common understanding of the jurors.

We agree that appellants' case requires a medical expert.

> By statute
>
> In an action alleging [medical] malpractice * * * which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must * * * serve upon defendant within 180 days after commencement of the suit an affidavit as provided by subdivision 4.

Minn.Stat. § 145.682, subd. 2 (1986). The affidavit required by Minn.Stat. § 145.682, subd. 4

> must be by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and served upon the defendant within 180 days after commencement of the suit against the defendant.

---

2. In *Thorson*, the nature of the trial court's ruling was not at issue because it was the trial court's grant of plaintiffs' cross motion for an extension of the time allowed for compliance with section 145.682 which was on appeal. *See Thorson* at 414–15.

3. In *Chizmadia v. Smiley's Point Clinic*, 428 N.W.2d 459 (Minn.Ct.App.1988), *pet. for rev. de-*

nied (Minn. Oct. 26, 1988) a trial court's ruling under Minn.Stat. § 145.682 was reviewed by this court as a summary judgment. However, *Chizmadia* predates *Thorson*, and does not address the question of "dismissal" versus "summary judgment" because no affidavit of expert review was filed in that case. *Id.* at 460.

Minn.Stat. § 145.682, subd. 4. Failure to submit such an affidavit or combination of affidavits and/or interrogatory answers

> results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case.

Minn.Stat. § 145.682, subd. 6.

■ A careful reading of section 145.682 suggests that great precision is neither expected nor required when setting forth

> the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

Minn.Stat. § 145.682, subd. 4. Therefore, we conclude that if any combination of affidavits and interrogatories contains information which complies with the statutory requirements and is sufficiently precise to enable *initiation* of the discovery process, that combination is adequate under the statute. We believe the affidavit and interrogatory answers presented in this case meet this minimal standard.

Initially, we note that

> The primary purpose of Minn.Stat. § 145.682 is to eliminate nuisance malpractice suits by establishing a process where affidavits of expert review are required to verify the lawsuit's validity.

*Parker v. O'Phelan,* 414 N.W.2d 534, 537 (Minn.Ct.App.1987), *aff'd by an equally divided court,* 428 N.W.2d 361 (Minn.1988). This goal may be achieved even in the absence of extremely precise information, since the information need not conclusively demonstrate that a case will be resolved in plaintiff's favor, but only that the plaintiff has a case which, in the view of a medical expert, has a reasonable possibility of being so resolved. Such a demonstration is consistent with the genesis of section 145.-682 as tort reform legislation aimed at avoiding abuse of the discovery process and eliminating the threat of litigation to obtain a "nuisance settlement." *See* Conference Committee Hearing, tape recording of March 14, 1986.

In view of the statute's purpose, we conclude that adoption by this court of the higher standard of specificity implicitly urged by respondents would result in a burden for appellants not contemplated by the legislature. Adopting the higher standard would also equate the statute with expert discovery provisions under the rules of civil procedure. Under both the statute and the rules, plaintiffs calling experts are required to state

> the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

*Compare* Minn.R.Civ.P. 26.02(d)(1)(A) and Minn.Stat. § 145.682, subd. 4. To interpret both the statute and the rule as requiring the same precision and detail would render that aspect of either the statute or the rule moot and would be inconsistent with the policy of construing conflicting statutory provisions "if possible so that effect may be given to both [provisions]." Minn.Stat. § 645.26, subd. 1 (1988). While we recognize that Minn.R.Civ.P. 26.02 is not technically subject to the provisions guiding statutory interpretation, we are not convinced that the legislature enacted a statute specifically requiring the precision already specifically required under the rules applicable to the situation. Additionally, the statute rendering the rule moot would be inconsistent with the general superiority of the rules in matters of "pleading, practice and procedure in the district courts," *see* Minn. R.Civ.P. 81.01(c); *see also* Minn.R.Civ.P. 1.

Further, we recognize that expert affidavits are required for cases having "cause[s] of action [for] which expert testimony is required to establish a prima facie case," Minn.Stat. § 145.682, subd. 2, and that such cases involve complex and technical subject matter. Because of the complexity of such suits, the legislature by enactment of section 145.682 has required that plaintiffs obtain expert analysis and verification of the viability of their claim. While the expert testimony required for actual recovery at trial must, by its nature, come from a medical expert, the affidavit, by statute, *"must* be made by the plaintiff's *attorney,"* who is presumably not a medical expert. Minn.Stat. § 145.682, subd. 4 (emphasis added). Thus, the legislature's rec-

ognition of the technical complexity of medical cases and requirement of expert medical review, combined with the explicit requirement that the affidavit regarding such review be made not by the reviewing expert but by counsel, suggests that in reviewing the affidavit courts cannot require extreme detail or precision.[4] To conclude otherwise will regularly produce the harsh result seen here where appellants' case was dismissed because an attorney, presumably with little or no medical training, was deemed to have provided insufficient details of the grounds for a medical expert's belief that negligence might have been present.

Additionally, our determination that the information provided by appellants meets the reasonable minimal standards of section 145.682 is consistent with Minnesota's policy preference that cases be decided on their merits. The supreme court has recently indicated that

> a statute is procedural when it neither creates a new cause of action nor deprives [a] defendant of any defense on the merits.

Stern v. Dill, 442 N.W.2d 322, 324 (Minn. 1989) (quoting Strauch v. Superior Court, 107 Cal.App.3d 45, 49, 165 Cal.Rptr. 552, 554 (1980)). Under this definition Minn. Stat. § 145.682 is procedural in nature. See Parker, 414 N.W.2d at 538 (also quoting Strauch and also concluding that Minn. Stat. § 145.682 is essentially procedural). Therefore, a dismissal for failure to meet the statute's requirements would be on procedural grounds. The supreme court has made clear that:

> An order of dismissal on procedural grounds runs counter to the primary objective of the law to dispose of cases on the merits.

Firoved v. General Motors Corp., 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967). See also Lampert Lumber Co. v. Joyce,

405 N.W.2d 423, 426 (Minn.1987) ("The law favors cases being decided on their true merits"). Thus, to employ a stringent standard for evaluation and to require submission of technically precise information would systematically produce procedural dismissals despite a strong policy to the contrary.

Furthermore, dismissal here, in addition to being procedural, is also required to be "with prejudice." Minn.Stat. § 145.682, subd. 6. According to the supreme court:

> Since a dismissal with prejudice operates as an adjudication on the merits, it is *the most punitive sanction which can be imposed* for noncompliance with the rules or order of the court or for failure to prosecute. It should therefore be granted only under exceptional circumstances.

Firoved at 283, 152 N.W.2d at 368 (footnote omitted, emphasis added).

Although it was issued before the effective date of Minn.Stat. § 145.682, we find Dennie v. Metropolitan Medical Center, 387 N.W.2d 401 (Minn.1986) instructive regarding what type of deficiency justifies dismissal with prejudice. In Dennie, the trial court suppressed testimony of both of plaintiff's medical experts and dismissed the case with prejudice. Dennie, 387 N.W.2d at 404. Suppression was ordered because plaintiff's attorney allegedly provided to defendant insufficient information regarding plaintiff's experts. In affirming this court's reversal of the trial court, the supreme court stated "only truly reprehensible conduct by an attorney will warrant dismissal of his or her client's case." Dennie, 387 N.W.2d at 407. By analogy, section 145.682 affidavits or interrogatories would have to be "reprehensibly" deficient to justify the "most punitive" of sanctions imposed by the trial court. We do not find appellants' affidavit is so woefully deficient.[5]

---

4. To require a different standard of precision when the information required to initiate a medical malpractice suit is provided by a combination of affidavits and interrogatories rather than by an affidavit alone would serve no purpose and make enforcement unwieldy and subject to potential abuse.

5. We believe that the trial court, if unsure whether a plaintiff's affidavit meets the statutory requirements, should allow the parties to attempt to remedy any informational deficiency perceived by the court by requesting the parties to submit the additional information or clarification needed for the court to make an in-

Finally, we believe our determination that appellants' affidavit is sufficient to meet statutory requirements corresponds to the legislative history of section 145.682. At a conference committee hearing, the bill's senate sponsor described its structure:

[THE STATUTE] sets up a two stage certification process where first at the time that the suit is first filed an affidavit has to be filed with the court providing * * * some legal basis for the claim and stating that it has been reviewed by an expert and that they basically believe that the evidence is there to proceed. * * *

Within 180 days [an affidavit of expert review] is filed and this gives more specific information including the names of the experts who would be called to trial and the specific information that they would be providing in this case so, *if you don't have any expert who is willing to take your side on the specific claim you're making about medical malpractice, you can't proceed with your lawsuit.*

*See* Conference Committee Hearing, tape recording of March 14, 1986 (emphasis added.) The senator's comments, especially the emphasized text, strongly suggest that the statute is primarily designed to assure medical malpractice defendants that the plaintiffs have an expert who is willing to testify, *see Parker*, 414 N.W.2d at 537: ("The affidavit of expert review fulfilled the purpose of Minn.Stat. § 145.682 by showing that an expert believed the case had merit"). The statute is only secondarily designed to address the technical theo-

ries of malpractice and the bases for those theories. Notably absent from the senator's description of the bill is any reference to stating the grounds for an expert's opinions.

Even though the standard for meeting the requirements of Minn.Stat. § 145.682 is minimal, a trial court may still grant an actual summary judgment should it find after discovery, specifically the taking of expert depositions, that the case presents no genuine issue of material fact.

## DECISION

The trial court's dismissal with prejudice was a dismissal under the statute rather than a "summary judgment."

Filing of an affidavit containing the information required by Minn.Stat. § 145.682 is necessary to initiate a medical malpractice action. Consistent with the purpose of the statute, with maintaining the integrity of the discovery rules, and with recognition of the presumptively non-expert nature of the attorney making the affidavit, the information contained in that affidavit cannot be required to be overly precise in nature. Such a conclusion is consistent with the policy of deciding cases on their merits, with recognizing the extreme harshness of the mandatory dismissal with prejudice for failure to meet that standard, and with the statute's legislative history. The trial court abused its discretion in finding the information presented by appellants to be insufficient under the statute. Therefore, dismissing appellants' action with prejudice was unwarranted.

Reversed.

[T]he trial court would have served [the plaintiff's] interest in seeing his cause of action concluded by [a] trial on the merits, and [the defendant's] interest in remaining free from prejudice, by an in camera inspection of all documents, a ruling on all disputed questions, and a continuance, if necessary, to allow [the defendant] to fully meet [the experts'] testimony.

*Dennie*, 387 N.W.2d at 404. *See also Dennie v. Metropolitan Medical Center,* 369 N.W.2d 552, 557 (Minn.Ct.App.1985).

formed decision, and should allow any necessary continuance for the non-submitting parties to properly assimilate such information and to incorporate it into their case preparation. Such a policy is consistent with the ultimate nature of the statute's mandatory sanction for noncompliance, the recent decisions of the state's appellate courts allowing an extension of time to file the required affidavit, *see Parker v. O'Phelan,* 414 N.W.2d 534 (Minn.Ct.App.1987), *aff'd by an equally divided court,* 428 N.W.2d 361 (Minn. 1988); *Stern v. Dill,* 430 N.W.2d 864 (Minn.Ct. App.1988), *aff'd,* 442 N.W.2d 322 (Minn.1989), and the supreme court's endorsement of this court's reasoning in *Dennie:*

SCHUMACHER, Judge (concurring in part, dissenting in part).

I join the majority's analysis of the first issue. However, I write separately because I do not believe the trial court abused its discretion in concluding that appellants failed to provide information meeting the requirements of Minn.Stat. § 145.682, subd. 4 (1986).

Under Minn.Stat. § 145.682, subd. 4 plaintiffs in malpractice cases must provide

the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

The trial court found that appellants "failed to provide the requisite information with regard to the basis for [appellants'] expert opinion." Only paragraphs 5 and 11 of the quoted affidavit attempt to provide a "summary of the grounds for each opinion" of appellants' expert. However, they give neither respondents nor the court any information they did not have when the suit was filed.

Initially, paragraph 11 indicates that the grounds for appellants' expert opinions are "[the expert's] background, training and experience as a medical doctor * * *." This information does not satisfy the statute because it gives no details for the basis of his opinions. To hold that the information required by Minn.Stat. § 145.682, subd. 4 need only be specific enough to justify initiation of the discovery process is clearly contrary to the plain language of the statute.

Paragraph 11 indicates that the grounds for appellants' expert opinion include "the medical records, death certificate and autopsy report referred to in the paragraph above." Ignoring the fact that paragraph 10 does not refer to any medical documents, this reference clearly does not satisfy the statute's requirements. Additionally, such a reference cannot support the experts' opinions in a manner consistent with the statute's language requiring a "summary."

The grounds for the expert opinion must be articulated with specificity so that medical merits of the case may be intelligently evaluated.

Once the trial court concluded that the information submitted by appellants was insufficient under the statute, it had no choice but to dismiss the case with prejudice. *See* Minn.Stat. § 145.682, subd. 6. While I agree with the majority that dismissal with prejudice is an extremely harsh sanction, the legislature has declared that to be the appropriate sanction for failure to meet the prescribed requirements. The majority has lowered the standard for review of information required under Minn. Stat. § 145.682. This is contrary to the plain meaning of the statute and contrary to what I perceive as the purpose of the statute, namely: to make sure there is a valid malpractice claim before engaging in expensive and time consuming discovery and to eliminate nuisance suits.

The requirements of the statute will be substantially curtailed by our approval of overbroad and vague affidavits.